**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Ronda L. Davis, et al. ) | **JURY DEMAND** |
| ) | |
| And Others Similarly Situated, ) | 10-cv-01564 (HHK) |
| ) | |
| ) | **CLASS ACTION** |
| Consolidated with ) | |
| Cynthia Dudley, et al. ) | 10-cv-1718 (HHK) |
| Plaintiffs ) | |
| v. ) | |
| ) | |
| ) | |
| The Government of the District of Columbia, et al., ) | |
| ) | |
| Defendants ) | |

**AMENDED COMPLAINT**

Come Now Plaintiffs and respectfully file the immediate Amended Complaint by the undersigned counsel, against Defendants based upon the following.

1. These consolidated lawsuits have been brought against the District of Columbia and its Mayor by the forty-five  (45) Plaintiffs for themselves and other African American employees and for other older employees of the Child and Family Services Agency of D.C. ("CFSA"). Plaintiffs and more than fifty (50) other members of the putative class were discharged by the Defendants in a "Reduction in Force" formally effective on June 11, 2010.

2.  This Court has jurisdiction over this case under 28 U. S. C. § 1331, § 1343 and § 1367 and under 42 U.S.C. § 2000e-2(k) and §  (5)(f) and D.C. Code 1.667.

3. Venue is appropriate under 28 U. S. C. § 1391.

**PARTIES**

4.  The Defendant Government of the District of Columbia is an "employer" as defined in the Human Rights Act of the District of Columbia, D.C. Code 1-2502(10), and in Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. § 2000(e)-(m).  In addition, a suit against Defendant D.C. Government is also appropriate as here when brought under 42 U. S. C. § 1981 by black employees or other former employees of this employer.

5.  The Defendant Mayor of the District of Columbia ("D.C.") is a necessary party in suits against the District of Columbia to enforce its Human Rights Act.

6.  The CFSA is an Agency of the Defendant District of Columbia Government that provides social services to children and their families who reside in the District of Columbia. The employees of the DC government in the CFSA are employees of the Defendant District of Columbia. The offices and work places of the CFSA employees are in D.C.

7.  The District of Columbia is a municipality responsible for the hiring, promotion and separation of employees in its agencies, including the CFSA.

8.  Defendant Adrian M. Fenty was the Mayor of the District of Columbia when these suits were filed and was made a Defendant only in his official capacity.  The Mayor of the District of Columbia in 2011 is now Vincent Gray, and he is sued only in his official capacity.

9.  The forty-five (45) Plaintiffs in these consolidated cases were career, non-supervisory employee of the two (2) Defendants in the CFSA on and before May 6, 2010.

10.  Plaintiff Ronda L. Davis is a black woman who was employed by the Defendant as a Social Services Assistant (SSA) until June 11, 2010, when the Defendant Agency discharged her from its service as a part of its 2010 downsizing program. She was first employed by the

Defendant Agency on August 22, 1991. She was born on June 8, 1970.

11.  Plaintiff Zacchaeus T. Ajakaiyiye is a black man.  He was employed by the Defendant Agency as a Social Services Assistant until June 11, 2010, when the Defendant discharged him as a part of the 2010 downsizing program.  He was born on July 1, 1947. He was first employed by the Defendant Agency in January 2005.  Although he was selected for promotion and training as a grade 9 Family Support Worker and rehired as a probationary employee, the Agency discharged him again on July 12, 2010, without providing him appropriate training.

12. Plaintiff Stephanie Renee Alston is a black woman who was employed for 22 years by Defendants, and had served many of those years as a SSA when the Defendants discharged her effective June 11, 2010. She was born on October 3, 1965. Her excellent job performance is reflected in the performance appraisals of her supervisors.

13. Plaintiff Kimberly Brown is a black woman who was employed by the Defendants for more than 17 years as a SSA.  She was born on April 22, 1960. The Defendants discharged her from their employment on June 11, 2010 as part of their 2010 downsizing program.

14.  Plaintiff Stephany M. Kagha is a black woman who was employed by the CFSA for 20 years and was a SSA when the Defendants discharged her from their employment effective on June 11, 2010. She was born on September 2, 1965.  She was injured while working for the Defendants and Defendants paid her worker's compensation benefits for that on-the- job injury. On June 11, 2010, the Defendants discharged her and also cut off her worker's compensation benefits.

15. Plaintiff Donna Yvetta Lee is a black woman who was employed by the Defendants

as a SSA. She was born on March 8, 1955. She was first employed by the CFSA on Dec. 16, 1996. She received credentials from Cornell University for a F.D.C. in December, 2009. Defendants discharged her from their employment effective June 11, 2010.

16.  Plaintiff Celciel W.  Moore is a black woman who was employed by the Defendant Agency as a program monitor, Grade 12. She was born on April 12, 1951. Defendants

discharged

her from their employment effective on June 11, 2010.

17. Darius Morris is a black man who was employed by the Defendants as a SSA until June 11, 2010. He was born on March 12, 1965. He was first employed by the Defendants in October 1994. He had been awarded a Bachelor's Degree well before 2010. After receiving the May 6, 2010 letter of Director Gerald, he applied for a FSW position but the Defendants rejected him and selected less qualified, less experienced and younger employees to fill open positions.

18.  Plaintiff Janice Smith Washington, is a black woman who was employed by Defendant Agency as a SSA until June 11, 2010, when the Defendant Agency discharged her from its employment. She was born on January 25, 1962. She was first employed by the Defendant Agency on January 4, 1989, and was promoted to a permanent position in October 1992.

19.  Each of the nine Plaintiffs identified in paragraphs 10 through 18 above has been a plaintiff in *Davis et al v. District of Columbia.* 10-cv-01564 since the first of these consolidated cases was filed on Sept. 16, 2010.

20.  Plaintiffs Dudley, Gray, Hailes and Kelly filed the second case, *Dudley, et al. v.*

*District of Columbia,* 10-cv-1718, and were the named Plaintiffs in that case. Each is African-American, and was age 40 or older at the time of their respective 2010 terminations.

21. An additional thirty-two (32) employees joined this case as Plaintiffs in December 2010. There are now forty-five (45) Plaintiffs in this case.

## FACTS CONCERNING DEFENDANTS' 2010 DISCHARGES OF 110 EMPLOYEES

22. Defendants "employed 832 staff" in the CFSA as of June 1, 2010.

23. On May 6, 2010, Defendants eliminated Plaintiffs' positions, and those of about fifty-five other non-supervisory employees in the CFSA. In a letter dated May 6, 2010 from Director Roque Gerald of the CFSA to its non-supervisory employees (including Plaintiffs) Defendants stated:

> "We express our sincere appreciation for faithful and dedicated service that you have…
> rendered for the citizens of the          District of Columbia but we must advise you that a
> ….reduction in force must be conducted…you will be separated     from District
> government …..effective 06/11/10. This action in no way reflects adversely on your
> performance of your   …..official duties."

24. Defendants' elimination of about 110 non-supervisory employees (including the Plaintiffs) and formal discharge of same effective on June 11, 2010 was not based upon performance deficiencies.

25.  About 83 or 84 of the 110 non-supervisory employees in the DC CFSA discharged by the Defendants on June 11, 2010 were over the age of 40, and more than 90% of them were age 37 or above.

26. At least 93% (or about102), of the non-supervisory employees discharged from their employment in the CFSA on June 11, 2010 were black.

27. A majority of the employees whom Defendants discharged were employed as Social

Service Assistants ("SSA employees"). Those positions were classified by Defendants as Salary Grade 8 positions.

28.   Of the 57 SSA employees whom the Defendants discharged on June 11, 2010, 56 are black and one is Hispanic.

29.   Until May 6, 2010, the Defendants had imposed no college education requirement for employees seeking or holding SSA positions as a qualification for employment or continued employment.

30.   The fifty-seven (57) employees employed by Defendants in SSA positions as of May 6, 2010 had performed their duties well and were competent employees despite the absence of bachelor's degrees.

31.   On May 6, 2010, the Defendants created a new position called "Family Support Worker" or the "FSW" position or positions. The Defendants classified that position as a Salary Grade 9 position.

32.   On May 6, 2010, Defendants imposed certain educational requirements for the FSW positions including a "Bachelor's Degree in Social Work or in a related social service field, i.e. psychology, sociology."

33.   Defendants also posted notice of at least thirty-five (35) FSW vacancies as new positions in their CFSA on May 6, 2010.

34.   More than 60% of the forty-five (45) Plaintiffs were employed as SSA employees and had been employed by Defendants in the SSA position for ten (10) or more years as of May 6, 2010.

35. Of the forty-five (45) Plaintiffs, 44 of them were born before June 11, 1970, and

therefore were at least 40 years old as of June 11, 2010.  One, Plaintiff Robinson, was born on

December 19, 1973; she was about age 36 ½ on that date.

36. Plaintiffs' average age as of June 11, 2010 was over 50.

37.  The Defendants discharged formally, effective as of June 11, 2010, one hundred and

ten (110) career non-supervisory employees who worked in and for the CFSA, including

Plaintiffs.

38.  The office of the Mayor of the District of Columbia rejected the grievances that the

collective bargaining agent for their employees, the American Federation of State, County, and

Municipal Employees Council 20 ("AFSCME"), brought, and declined to accept AFSCME's

proposals to modify the implementation of the 2010 downsizing program.

39. Each of the first nine (9) named Plaintiffs identified above in paragraphs 10-18

performed well and received favorable ratings from the Defendants until the Defendants

discharged them.

40. In addition to the nine (9) named Plaintiffs, thirty-two (32) employees were added to

the first filed suit, *Davis et al, v. DC*  case, 10-cv -1564.

41. The Complaint in the second case, 10-cv-1718, named four additional Plaintiffs,

Dudley, Gray, Hailes and Kelly.  Each of them was a SSA employee of the Defendants and the

Defendants discharged each of them from its employment formally effective on June 11, 2010.

Each SSA employee of Defendants was discharged effective June 11, 2010.

42. In the United States, the proportion of adult black residents who have attained a

Bachelor's Degree is significantly lower than the proportion of adult white residents who have

such a degree, both for those residents age 18 and above, and those 21 and above.

7

43. In the United States the proportion of adult black residents who attain a Master's Degree is significantly lower than the proportion of white, non-Hispanic employees age 21 and above who have done the same.

44.  The Defendants had notice of and knew or should have known the facts set forth in paragraphs 42 and 43 above.

45.  Each of the non-supervisory career employees who received the May 6, 2010 letter from Director Gerald had successfully performed the duties of the position he or she held.

46.  Effective June 11, 2010, Defendants eliminated the positions of 110 non-supervisory employees in the CFSA and discharged each of those non-supervisory employees from District of Columbia Government service, and at least 105 of them were not "re-hired" as FSW employees.

47. The great majority of the 105 to 110 employees discharged and not "re-hired" as FSW employees were age forty (40) or older on June 11, 2010, and had had four (4) or more years of successful service to the Defendants in the CFSA.

48. The great majority of the employees whom the Defendants discharged from their employment in the CFSA were black, at least two (2) are Hispanic, and only one (1) or two (2) are white.

49.  Defendants' discharge of black  employees in its 2010 downsizing program was at a rate significantly higher than its discharge of white employees in that downsizing program.

50. The disparity based upon race between the 105 to 110 employees whom the Defendants discharged from the CFSA and the remaining approximately 716 employees Defendants retained in the CFSA is  statistically significant and violates the 80% rule of thumb

set forth in the Guidelines of the United States Equal Employment Opportunity Commission and four (4) other Federal Agencies. See, 29 C.F.R. § 1607.4.

51.  The duties that Defendants assigned to the Family Service Worker positions in May 2010 are in substance and practice the same as the duties that Defendants had assigned to Social Service Assistant positions before that date.

52. In addition to Plaintiffs Ajakaiyiye and Morris, see paragraphs 11 and 17 above, several of the other experienced SSA employees had obtained Bachelor's Degrees.  Defendants did not select them for FSW positions even though they had experience performing the same duties and performed them well.

53.  The Defendants hired or promoted younger employees (including some SSA positions) to the FSW positions who had three (3) years or less experience, instead of promoting Plaintiffs and the other members of the putative class of older employees who had much more experience, and had therefore developed a greater ability to perform their duties well as compared to those new employees or less experienced employees who were awarded new employment or renewed employment with the Defendants.

54.  The Plaintiffs and other members of the putative class who held Program Monitor, Contract Monitor Specialist or similar positions and were also discharged from employment by Defendants on June 11, 2010.  Each could have performed the duties of their position or other CFSA positions well after June 11, 2010, because of their extensive experience, knowledge and performance records prior to that date.

55.  Each of the eighteen (18) Associate Social Workers terminated on June 11, 2010 could also have performed the duties of their positions after that date, because of their

9

knowledge and experience, as well as their educational qualifications prior to that date.

56. The Defendant Agency in its letter of May 6, 2010 stated to "All Staff" on June 7, 2010, that all of the first seventeen (17) former or current employees hired for FSW positions by "Supervisors from several areas of CFSA interviewed and selected them from a large number of candidates."

57. In its May 6, 2010, letter, Defendants did not state a reason for the discharge of the 110 employees that is job-related for the positions in question or consistent with business necessity.

58.  Nor did the May 6, 2010 letters (see above paragraph 23 above) state any reason for limiting the number of rehires from within Defendant Agency to seventeen (17) former employees.

59. In connection with the grievances it filed on behalf of the employees discharged by Defendants, AFSCME District Council 20 sought information from the Defendants as to the reasons for their abolishing the positions and discharging the 110 non-supervisory employees it represented.

60.  In its response to inquiries from AFSCME, Defendants still did not state budgetary reasons as a basis for the 2010 downsizing program and the resulting discharge of experienced employees, although Defendants continued to hire new employees for positions in the CFSA in Fiscal Years 2010 and 2011.

61.  Defendants have not identified any record or other document showing that Plaintiffs' discharge as well as the discharge of other non-supervisory employees was job-related or based upon business necessity.

62.  Defendants have not produced or identified any evidence demonstrating that the employment practices in designing and implementing the 2010 downsizing program were predictive of or significantly correlated with any elements of work-related behavior relevant to any job or jobs for which candidates were being evaluated.

63.  From May 6 through September 30, 2010 the Defendants hired many new employees who were under the age of 30, and the great majority of them were age 34 or younger.

64.  Defendants' budget for fiscal year 2010 permitted Plaintiffs' continued employment as well as that of other black and older employees whose positions were eliminated and whose employment was terminated by the Defendants on June 11, 2010, if the Defendants had stopped hiring new employees.

65.   Defendants' employment practices and decisions in their May and June 2010 downsizing program had a discriminatory impact against employees thirty-six (36) years old or older because of their age, and favored employees and new hires age thirty-two (32) and under.

66.  Defendants' conduct and implementation of their 2010 downsizing program for the CFSA had a discriminatory impact upon older black employees, and favored their white employees.

67.  Before May 6, 2010 certain high-ranking officials employed by Defendants asserted that Federal Government agencies which granted funds to the DC-CFSA had regulations or guidelines that required or preferred state and local agency employees, other than certified social workers, who offered financial assistance to sick or otherwise troubled children and their families, to those who have college or graduate degrees in social work or in related fields.

68. These assertions by officials of the Defendant Agency described above were incorrect.   Federal agencies that provide federal funds to state and local children and family service agencies do not require or encourage such agencies to impose an educational level, such as a Bachelor's Degree, as a condition of employment for paraprofessional employees.

69.  By June 7, 2010, the D.C. Council had restored funding for some of the CFSA units, and had lessened the need to reduce CFSA's budget on June 11, 2010.

70.  Prior to June 11, 2010, the D.C. Government had a budget that permitted the Defendants to continue their employment of the 110 employees in the CFSA whom they discharged from their service effective on that date, that is, if it had not hired new employees from May through September 30, 2010.

71.  The Defendants did not conduct or cause to be conducted any validity study that showed that a Bachelor's Degree was "job-related" for the positions of Social Service Assistant or Family Service Assistant position, or Program Monitor or other Grade 9 or 11 or 12 positions.

72.  Defendants did not conduct or cause to be conducted any "job-related" validity study that showed that a Master's Degree was necessary or job related for the Associate Social Worker positions.

73.  One employee discharged by Defendants, Plaintiff Laura Smart, filed a petition for appeal dated July 13, 2010 to Defendant's Office of Employee Appeals challenging the Defendants' "Reduction-in-Force."

74.  In the Agency's Response to Smart's Petition for Appeal, the Defendant's Director of the Child and Family Services Agency stated as follows on the second page:

> "With regard to Ms. Smart's claim that there was no basis for the Reduction-In-Force, I as the Agency's Director made a management decision to effect an agency-wide re-

alignment, which resulted in the Reduction-In-Force of some positions….Additionally the….Agency, like most District of Columbia Government  Agencies, had its agency's .. …budget cut, which added additional pressures to reduce staff…"

75. Defendants have not published or produced any documents or data or other information showing that its conduct in discharging its 110 non-supervisory employees effective on June 11, 2010 as set forth above was job-related for any positions abolished and further have not shown that the decisions they made in the 2010 downsizing program were predictive of or significantly correlated to successful or unsuccessful work behavior.

76.  Plaintiffs and other former Social Services Assistants, Program Monitors, and Associate Social Workers  discharged by the Defendants were harmed not only by loss of their annual salaries but also by loss of health care coverage and by reduced pension benefits for such time as they would have remained employed by the Defendant Agency absent the Defendants' discriminatory conduct against them in the 2010 downsizing program.

### PLAINTIFFS COMPLIED WITH THE REQUIREMENTS OF D.C. Code 12-309

77.  Prior to filing this suit, pursuant to D. C. Code 12-309, Plaintiffs notified the Defendant Mayor of the District of Columbia and the Attorney General of their claims against the Defendants related to the subject reduction in force announced by letter of May 6, 2010, its discriminatory impact against its older workers and its disparate impact against black employees.

### EXHAUSTION OF ADMINISTRATIVE PROCEDURES UNDER TITLE VII

78.  In July and August 2010, Plaintiffs Ajakaiye and Morris filed charges with the United States Equal Employment Opportunity Commission at its Washington, D. C. Field Office alleging discriminatory conduct against its black employees.  Other Plaintiffs also filed such charges.

13

79.  Plaintiffs Ajakaiye and Morris gave notice to the Defendants that they believed Defendants' conduct in planning and implementing the 2010 reduction was unlawful under Title VII as well as under the Human Rights Act of the District of Columbia.

80.  More than 180 days have elapsed since Plaintiffs Ajakaiye and Morris filed their charges. Both requested right to sue letters, and the EEOC forwarded those requests to the U.S. Department of Justice.  The Right-to-Sue letters from the Department of Justice were mailed to them on March 14 or 15, 2011.

## CLASS ACTION ALLEGATIONS

81. Plaintiffs allege under Rule 23, Fed. R. Civ. P. that the membership of  the class of older employees and of black employees harmed is so numerous that joinder of the parties in one suit would be impracticable; (2) the questions of fact and law as to liability common to the 45 Plaintiffs are also common to the approximately 55 other members of the class; (3) the claims of the 45 Plaintiffs are typical of the claims of the other members of the class; and (4) Plaintiffs and their attorneys will fairly and adequately protect the interests of the class.

82. The Defendants in their 2010 downsizing program have acted on claims that the 45 Plaintiffs and the other members of the class of employees were harmed by barring them from performance of their duties on May 6, 2010, and discharging each from their employment effective on June 11, 2010.

## FIRST CLAIM FOR RELIEF: AGE DISCRIMINATORY PRACTICES

83.  In the 2010 downsizing program Defendants announced by letter of May 6, 2010, the Defendants intentionally discriminated against their older employees because of their age, in violation of the Human Rights Act of the District of Columbia. DC Code Sections 1-2511 and

2512(a)(1) and 1-2532, and 1-607.05 and 1-607.06.

84. Defendants' employment practices in May and June 2010 with respect to the Plaintiffs and other employees in their CFSA had an adverse and discriminatory impact against that Agency's older employees and favored younger employees and applicants for employment without any showing that they were job related and required by business necessity.  Said actions violated the Human Rights Act of the District of Columbia. DC Code 1-2512(a)(1) and 1-2532 and 1-607.05 and 1-607.06(a) and (b).

## SECOND CLAIM FOR RELIEF: RACE DISCRIMINATION

85.  In the design and implementation of the downsizing program they announced by letters dated May 6, 2010, formally effective June 11, 2010, Defendants intentionally discriminated against black employees because of their race in violation of the Human Rights Act of the District of Columbia, and in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of 42 U. S. C. §1981.

86.  Defendants' implementation of the 2010 downsizing in CFSA had an adverse impact against black employees, as compared to white, non-Hispanic employees under Title VII of the Civil Rights Act as amended, and the D.C. Human Rights Act.  D.C. Code 1-607(a) and (b) at 1-2512(a) and 1-2532.

87.  The Defendants have not and cannot show that the design and implementation of their 2010 downsizing program was job-related and required by business necessity. Indeed, the Defendants admitted, through the Director of the CFSA, that the decision to abolish the positions and discharge the employees in those positions was "a management decision."  See paragraph 74 above.

15

WHEREFORE, Plaintiffs urge this court to render an order and/or judgment consistent with the foregoing:

1) Pursuant to Rule 23 of the Federal Rules of Civil Procedure, certify claims of older employees and black employees as a class action and providing for notice to the class;

2) Find that Defendants violated the equal employment opportunity rights of the Plaintiffs and the other members of the class of black former employees of the Defendants under the Human Rights Act of the District of Columbia; and Title VII of the Civil Rights Act of 1964, and 42 U. S. C. § 1981.  Based thereupon, the court should issue a Declaratory Judgment so stating, enter an Injunction prohibiting such conduct in the future prescribing reports and methods of lawful administration in the future, and requiring make-whole relief to the Plaintiffs and members of the class by re-employing them and granting them make-whole monetary relief.

3) After trial and a finding of liability by a jury or the Court, enter judgment of monetary damages in Plaintiffs' favor, and in that of the members of the class of black employees harmed by the Defendants' conduct in their 2010 downsizing program;

4) Upon a finding of purposeful discrimination, enter awards in an amount to be determined by a jury, to wit,  that Plaintiffs and the other members of the class of black employees they represent suffered pain and suffering and other emotional distress as a result of their having been illegally discharged from their employment by the Defendants;

5) Upon a finding that Defendants' aforementioned practices have a discriminatory impact against black employees, award make-whole relief to the Plaintiffs and the class they represent, including re-employment in their former positions or other positions and full monetary relief as necessary to make them whole;

16

6) Enter an order directing the Defendants to pay costs of litigation including reasonable attorneys' fees to the attorneys for the Plaintiffs in this case; and

7) Grant such other relief as may be warranted.

## **JURY TRIAL**

Pursuant to Rule 38, Fed. R. Civ. P., Plaintiffs request a jury trial on their claims under 42 U.S.C. § 1981 and the D.C. Human Rights Act.

**Respectfully submitted,**

_____/s/_____          _____/s/_____
Donald Temple (408749)            David L. Rose (376379)
1229 15th St., NW                 Joshua N. Rose (420606)
Washington, D.C.  20005           Yuval Rubinstein (503489)
202-628-1101                      Rose Legal Advocates, LLP
dtemplelaw@gmail.com              1900 L Street, N.W., Suite 610
                                  Washington, D. C. 20036
                                  (202) 331-8555
                                  (202) 331-0996
                                  daver@roselawyers.com
                                  yrubinstein@roselawyers.com

Attorney for Dudley et al.        Attorneys for Davis et al.

Date:   May 6, 2011