**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| Ronda L. DAVIS, plaintiffs named in paragraphs 9-58 and Other class members, | ) ) ) | |
| Plaintiffs, | ) ) | 10-cv-01564 (RC) |
| v. | ) ) | |
| The District of Columbia, | ) | Demand for Trial by Jury |
| Defendant. | ) ) | |
| _____ | ) ) | |
| Cynthia DUDLEY, et al., | ) ) | Consolidated With |
| Plaintiffs, | ) ) | 10-1718 (RC) |
| v. | ) ) | |
| District of Columbia, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

## Third Amended Complaint

.

## Parties

1. Defendant, District of Columbia is a local government unit that maintains a Child and Family Services Agency ("CFSA") which employs employees to carry out its responsibilities.

2. The Defendant is an "employer" and plaintiffs were its "employees" within the meaning of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. 2000e-2 et seq.

3.  Plaintiffs are individuals who were employees of CFSA prior to June 11, 2010 and were discharged by defendant on June 11, 2010, or shortly thereafter.

4.  Plaintiffs are part of a group of 115 individuals employed in full time, career service jobs by CFSA in early 2010 who, on or near May 6, 2010, were selected by defendant to lose their jobs as part of a realignment and "Reduction in Force" ("RIF") announced by the Director of the CFSA.

5.  Defendant selected some 18 members of the RIF group to be transferred to "Family Support Worker" positions on or near June 7, 2010.

6.  Defendant selected 97 of the members of the RIF group for termination of employment effective June 11, 2010.

7.  All named plaintiffs were identified for RIF in May. All but Ajakaiye were not selected for FSW positions on June 7. All were terminated from their employment with defendant on or near June 11, 2010.

8.  Plaintiffs bring this action for themselves and for other members of the group who received the RIF notices described in paragraphs 4 through above and were discharged from employment by defendant on or close to June 11, 2010.

9.  Zacchaeus T. Ajakaiye is an African American male, born in 1947 and resides in Upper Marlboro, Md. He was born in 1947 and worked at the CFSA from February 23, 2003 as a SSA. His last grade and step were 8 and 5 respectfully. He was subject to the RIF. He holds a MSW from Howard. He lost his job in June 2010.

10. Stephanie Renee Alston is an Africa American female who resides in D.C. She was born in 1966 and hired at the CFSW on September 15, 1988 as a SSA. Her last grade

and step were 8 and 7. She was subject to the RIF.  She lost her job in June

2010.

11. Mable Larraine Boler is an African American female who resides in D.C. She was

born in 1946 and hired at the CFSA on September 23, 1992 and worked as a SSA.

Her last grade and step were 8 and 7.  She was subject to the RIF.  She lost her job in

June 2010.

12. Kimberly Brown is an African American female who resides in Ft. Washington, Md.

She was born in 1968 and hired at the CFSA on November 2, 1992. She worked as a

SSA ending at grade 8, step 7. She was subject to the RIF. She lost her job in June

2010.

13. James E. Byrd Jr. is an African American male who resides in Upper Marlboro, Md.

He was born in 1959 and hired at the CFSA on July 30, 2001. He worked as a SSA

ending at grade 8, step 6.  He was subject to the RIF.  He lost his job in June

2010.

14. Gwendolyn Carthens is an African American female who resides in Hyattsville, Md.

She was born in 1953 and hired at the CFSA on August 14, 1980. She worked as a

SSA ending at grade 8, step 8. She was subject to the RIF.  She lost her job in June

2010.

15. Ronda Lannete Davis is an African American female who is the first listed Plaintiff

and resides in Ft. Washington, Md. She was born before June 11, 1970 and hired at

the CFSA on August 26, 1996. She worked as a SSA ending at grade 8, step 10. She

was subject to the RIF. She holds a MSW from Howard University.  She lost her job

in June 2010.

16.  Sakithia Latrena Davis is an African American female who resides in Waldorf, Md. She was born in 1977 and hired at the CFSA on June 10, 1996. She worked as an SSA ending at grade 8, step 6. She was subject to the RIF.   She lost her job in June 2010.

17. Cynthia C. Dudley is an African American female who resides in Washington, DC. She was born in 1955 and was hired at CFSA on August 9, 1993.  She worked in the position of SSA, ending in grade 8, step 8. She was subject to the RIF.   She lost her job in June 2010.

18. Clarence Evans Jr. is an African American male who resides in Bowie, Md. He was born in 1950 and was hired at the CFSA on December 1, 1997. He worked as a SSA ending at grade 8, step 10. He was subject to the RIF. He has a BA degree.   He lost his job in June 2010.

19. Elaine D. Farrar is an African American female who resides in D.C. She was born in 1958 and was hired at the CFSA on January 16, 2001. She worked as a Program Monitor ending at grade 12, step 7, and was subject to the RIF.  She hold a Masters degree in mental health.  She lost her job in June 2010.

20. Gale Austin Fields is an African American female who resides in Forest Heights, Md. She was born in 1947 and hired at the CFSA on March 25, 1977. She worked as a SSA ending at grade 8, step 10. She was subject to the RIF.  She lost her job in June 2010..

21. Omari A. Francis is a African American male who resides in D.C.  He was born in 1980 and hired at the CFSA on July 11, 2005. He worked as a SSA ending at grade 8, step 5. He was subject to the RIF.  He lost his job in June 2010.

22. Karone Gray is African American female. She was born in Washington, DC on February 16, 1970. She was hired at CFSA on June 13, 1993 in the position, office clerk (typing). Hired as SSA in October 1998 under the LaShawn General Receivership. Ending grade 8 step 8 at the time of the RIF.  She lost her job in June 2010.

23. Ronald Dwight Green is an African American male who resides in Owings Mills, MD. He was born in 1973 and hired at the CFSA on May 15, 2000. He worked as a SSA ending at grade 8, step 6. He was subject to the RIF.  He lost his job in June 2010.

24. Vickie Marie Guion is an African American female who resides in DC. She was born in 1962 and hired at the CFSA on March 22, 1993. She worked as a Clerical Assistant (1993-1998) and then a SSA ending at grade 8, step 7. She was subject to the RIF. She lost her job in June 2010.

25. David Leonard Hailes is an African American male who resides in Washington, DC. He was over 40 years of age at the time of the RIF and was hired at the CFSA on April 6, 2005. He worked as a SSA when he was subject to the RIF. His ending grade was 8, step 7.  He lost his job in June 2010.

26. Ernest Hunter is an African American male who resides in Waldorf, Md.  He was born in 1963 and hired at the CFSA in April, 2007.  He worked as a Contract Compliance Officer for three years ending at grade 13, step 3.  He was subject to the RIF.  He lost his job in June 2010

27. Carla C. Johnson is an African American female who resides in D.C. She was born in 1969 and hired at the CFSA on December 11, 1988. She worked as a SSA ending at grade 8, step 7. She was subject to the RIF.  She lost her job in June 2010.

28. Karen J. Johnson is an African American female who resides in Greenbelt, Md.  She was born in 1966 and hired on January 9, 1995. She worked as a SSA ending at grade 8, step 8. She was subject to the RIF.  She lost her job in June 2010.

29. Verjena Jones is an African American female who resides in Oxen Hill, MD. She was born in 1948 and hired in March of 1994 as a transfer from Youth Services Divison. She worked as an SSA ending at grade 8. She was subject to the RIF.  She lost her job in June 2010.

30. John Roland Jordan is an African American male who resides in D.C. He was born in 1972 and was hired at the CFSA on January 29, 2002. He worked as a SSA ending at grade 8, step 6. He was subject to the RIF.  He lost his job in June 2010.

31. Stephany Miller Kagha is an African American female who resides in Burtonsville, Md. She was born in 1966 and hired at the CFSA on April 20, 1987. She worked as a SSA ending at grade 8, step 8. She was subject to the RIF.  She lost her job in June 2010.

32. Lorraine Anne Kelly is an African American female who resides Temple Hills,  Md. She was over 40 years of age at the time of the RIF and was hired at the CFSA on May 30, 1992. She worked as a SSA ending at Grade 8, step 9. She was subject to the RIF.  She lost her job in June 2010.

33. Mary Ruth King is an African American female who resides in Capitol Heights, Md. She was born in 1956 and was hired at the CFSA on November 29, 1982. She worked

as a secretary and then a SSA ending at grade 8, step 7. She was subject to the RIF.

She lost her job in June 2010.

34. Donna Yvetta Lee is an African American female who resides in D.C. She was born

in 1955 and hired at the CFSA on July 6, 2009. She worked as a SSA ending at grade

8, step 5.  She was subject to the RIF.   She lost her job in June 2010.

35. Luz A Lagares is a Hispanic female who resides in Hyattsville, Md. She was born in

1961 and was hired at the CFSA on January 13, 2003. She worked as a Social Worker

Associate ending at grade 10, step 6. She was subject to the RIF.  She holds a BA in

social work. She lost her job in June 2010.

36. Francesca U. Letren is an African American female who resides in D.C. She was born

in 1954 and hired at the CFSA on June 3, 2002. She worked as a Clerical Assistant

ending at grade 7, step 6. She was subject to the RIF.  She lost her job in June 2010.

37. Michelle Millard-Simms is an African American female who resides in DC. She was

born in 1976 transferred to the CFSA in December 2005. She was detailed without

choice to do mentoring and tutoring from March 2007 until February 2008. She

worked as a Clinical Specialist ending at grade 12, step 5. She was subject to the RIF.

She lost her job in June 2010.

38. Shirley Mims is an African American female who resides in D.C. She was born in

1959 and hired at the CFSA on July 21, 1992. She worked as a SSA ending at grade

8, step 8. She was subject to the RIF, and lost her job in June 2010.  Defendant hired

her back as a CPR assistant on January 3, 2012.

39. Celciel W. Moore is an African American who resides in Bowie, MD. Celciel was

born in 1951 and hired at the CFSA on February 6, 2006. Celciel worked as a

Program Monitor ending at grade 12, step 5. Celciel was subject to the RIF.  She lost her job in June 2010.

40. Darius Morris is an African American male who resides in Capitol Heights, MD.  He was born in 1965 and was hired at the CFSA on October 17, 1994. He worked as a SSA ending at grade 8, step 8. He was subject to the RIF. He has a BA and a few credits short of a MSW.  He lost his job in June 2010.

41. Stacy Dave Murry is an African American who resides in Oxon Hill, MD.  Stacy was born in 1970 and was hired at the CFSA on December 2, 1996.  Stacy was a full Social worker first, and then a program monitor for 12 years, and then a SSA ending at grade 8, step 8.  Stacy was subject to the RIF. He holds a B.A.   Stacy lost the SSA job in June 2010.

42. Nicky Odaka is an African American who resides in Upper Marlboro, MD. Nicky was born in 1969 and was hired at the CFSA on December 10, 2001. Nicky worked as a SSA ending at grade 8, step 9.   Nicky was subject to the RIF. Nicky holds a MSW, but started out with a BSW.   Nicky lost the SSA job in June 2010.

43. Moses Ogokeh is an African American male who resides in Bowie, MD. He was born in 1959 and was hired at the CFSA on October 26, 1998. He worked as a Program Monitor ending at grade 12, step 6. He was subject to the RIF.

44. Edward L. Randolph is an African American male who resides in D.C. He was born in 1967 and was hired at the CFSA on December 1, 2004. He worked as a secretary and then became a SSA in March, 2005. His final position was SSA- grade 8, step 6. He was subject to the RIF.  He lost his job in June 2010.

45. Trina M. Robinson is an African American female who resides in DC.  She was born in 1973 and was hired at the CFSA on December 1, 2004. She worked as a SSA ending in grade 8, step 5. She was subject to the RIF. She was on maternity leave when RIF happened, and she was RIF'd before she was due back to work.  She lost her job in June 2010.  She was hired as a FSW for the collaborative (contracted under CFSA) on October 10, 2012 making less money than at CFSA.

46. Dianne E.H. Simpson is an African American female who resides in DC. She is over 40 years of age and was hired at the CFSA on July 29, 1996. She worked as a Paralegal Specialist ending at grade 12, step 10.  She lost her job in June 2010.

47. Laura Smart is a Caucasian female who resides in Gaithersburg, MD. She was born in 1967 and was hired at the CFSA on September 8, 2003. She worked as a Social Worker Associate ending at grade 10, step 5. She was subject to the RIF. She had a BA.  She lost her job in June 2010.

48. Darryl Stanfield is an African American male who resides in DC. He was born in 1956 and was hired at the CFSA on May 3, 2003. He worked as a SSA ending at grade 8, step 9. He was subject to the RIF.   He lost his job in June 2010.

49. Angela G.K. Thomas is an African American female who resides in Burtonsville, MD. She was born in 1966 and was hired at the CFSA on May 3, 1993. She started as Eligibility technician and then Health Services Program Liason, ending at grade 9, step 6. She was subject to the RIF.  She lost her job in June 2010.

50. Chanelle Tibbs is an African American female who resides in Oxon Hill, MD. She was born in 1981 and was hired at the CFSA on September 1, 1996. She started as a

Clerical Assistant and then became a SSA ending at grade 8, step 8. She was subject to the RIF.   She lost her job in June 2010.

51. Germaine E. Walker is an African American female who resides in D.C. She was born in 1959 and was hired at the CFSA in September, 1996. She worked as a SSA ending at grade 8, step 8. She was subject to the RIF.  She lost her job in June 2010.

52. Janice S. Washington is an African American female who resides in Upper Marlboro, MD. She was born in 1962 and was hired at the CFSA on October 5, 1992. She worked as a SSA ending at grade 8, step 8. She was subject to the RIF.  She lost her job in June 2010.

53. Patricia C. Washington is an African American female who resides in DC. She was born in 1952 and was hired at the CFSA on October 1, 1987. She worked as a SSA ending at grade 8, step 9. She was subject to the RIF.  She lost her job in June 2010.

54. Rodney E. Williams is an African American male who resides in Bowie, MD. He was born in 1965 and was hired at the CFSA on December 14, 1998. He worked as a SSA ending at grade 8, step 6. He was subject to the RIF.  He lost his job in June 2010.

55. Wanda M. Williams is an African American female who resides in DC.  She was born in 1964 and was hired at the CFSA on November 4, 1996. She worked as a Program Monitor ending at grade 11, step 6. She was subject to the RIF.  She lost her job in June 2010.

## The RIF Selection

56. At some point prior to May 6, 2010, defendant, with full knowledge of the race and

age of each incumbent, selected 115 positions to be eliminated in a Reduction in Force ("RIF") and determined that the incumbents would lose their jobs if not selected for other positions.

57. Defendant did not conduct a validity study to support the RIF selection procedure consistent with D.C. Code §§1-607.06 or 2-1401.

58. At some point prior to May 6, 2010, defendant made a decision to select incumbents in positions known as "Social Services Assistant" ("SSA") for discharge from employment. Fifty-seven of the 115 employees who received RIF notices in May held the SSA job title.

59. Defendant did not conduct a validity study to support the elimination of SSA positions selection procedure consistent with D.C. Code §§1-607.06 or 2-1401.

60. At some point prior to May 6, 2010, defendant made a decision to select incumbents in a position known as Social Work Associate ("SWA") for job elimination.  Sixteen of the 115 employees who received RIF notices held the SWA job title.

61. Defendant did not conduct a validity study to support th elimination of SWA selection procedure consistent with D.C. Code §§1-607.06 or 2-1401.

62. On or near March 16, 2010, defendant made a decision to create new positions at CFSA with the job title "Family Support Worker" (FSW).

63. On or near June 9, 2010, some 18 of the 115 employees who had received RIF notices accepted offers of employment in the newly created FSW job title.

64. Defendant hired another 20 employees into the FSW job title prior to the October 2010 start of FY 2011.  None of the 97 employees whose jobs were eliminated on June 11, 2010 were offered full time work in the FSW job title.

65.  The duties of the SSA and FSW job titles are sufficiently similar that successful performance in an SSA position is a very good indicator of ability to perform the FSW job.  The FSW position was functionally the same as the SSA and SWA positions.  Incumbents who had performed successfully in those positions were qualified to perform the duties of the FSW and of other similar positions filled during FY 2010-2011.

66. African American and older employees in the United States and in the Washington, D.C. metropolitan area have a significantly lower likelihood of holding a Bachelor's Degree than white and other than younger employees.

67. Defendant imposed an education requirement as a selection criterion for filling the FSW jobs in June 2010 that is not job related or consistent with business necessity.  Defendant did not conduct a validity study to support that selection procedure consistent with D.C. Code §§1-607.06 or 2-1401.

68.  Defendant could have used job experience in the SSA, SWA and/or Program Monitor job titles or other comparable experience as a selection procedure for the 38 FSW positions filled in the summer of 2010.  Such an alternative would have had less disparate impact than the education requirement defendant used.

69.  None of the plaintiffs and none of the other members of the RIF class was discharged for cause or for poor performance.  All had performed the duties of their positions in at least a satisfactory manner prior to June 2010.

70. By letter of May 6, 2010, the Defendant, through Director Gerald, advised each of the 105 employees were in GS 12 grades and below whom it selected for discharge from its employment that:

> "…despite your" years of "faithful service you have rendered to
> the citizens of the District of  Columbia we must advise you (of) a
> reduction in force…This letter serves as   official notice of at least thirty
> (30) calendar days that you will be  separated       from District
> government service effective 6/11/10."  Letter dated May 6, 2010, Ex.1,
> Statement of Undisputed Facts, page 1…..
>
> Effective today you will be placed on administrative leave with
> pay" and "You are to immediately return all building keys and security
> badges, cell phones and other Agency property…"  Ex.1, p. 2.

71. Of the 115 employees that Defendant dismissed formally on June 11, 2010, in the

    RIF, 105 were non-managerial employees in positions Grade 12 or lower, that were

    covered by the collective bargaining agreement.

72. The salary and benefits of the employees who held positions above Grade 12 were

    higher as were the costs to defendant of employing them.

73.  Defendants offered no financial reason for selecting 105 employees at or below

    Grade 12 for discharge, while retaining almost all of the GS 13, 14 and 15 positions

    and employees in those salary grades, many of whom hold manager positions in

    CFSA.

74.  Defendant offered budget related reasons for selecting plaintiffs and the other

    members of the RIF class to lose their jobs in June 2010.

75.  Defendant could have accomplished any legitimate budget related goal through less

    discriminatory means than the RIF and re-hire process it chose to use.

76. Plaintiffs and other former employees discharged by the Defendant were harmed not

    only by loss of their salaries but also by loss of health care coverage and by reduced

    pension benefits and other monetary losses, but also by emotional distress and worry

    and loss of prestige as a result of the Defendant's conduct in designing and

    implementing the 2010 Reduction in Force and Realignment

**PLAINTIFFS COMPLIED WITH THE REQUIREMENTS D.C. CODE 12-309**

77. In September, 2010 Plaintiffs, for themselves and for all members of the RIF class, wrote letters to Mayor Fenty and the Attorney  General of the District of Columbia advising them of their plans to bring suit against the Defendant for violations of the Human Rights Act in its design and implementation of the RIF of June 11, 2010. Those letters satisfy the requirements of DC Code 12-309.

**FIRST CLAIM FOR RELIEF: AGE DISCRIMINATORY PRACTICES**

**Violation of the DCHRA, D.C. Code 2-1402.11, 2-1401 et. seq.**

78. Plaintiffs incorporate the allegations of paragraphs 1 to 77 as if fully set forth herein.

79.  Forty one (41) of the forty-eight (48) named plaintiffs were over 40 as of June 11, 2010.

80.  Plaintiffs were employees of defendant prior to June 11, 2010.

81.  Plaintiffs suffered an adverse job action and were injured when defendant selected their positions for elimination prior to May 6, 2010.

82.  Plaintiffs suffered additional harm when they were not selected for the FSW positions that defendant filled in the summer of 2010, or for other jobs filled by defendant during FY 2010-2011.

83.  Plaintiffs suffered additional harm when their employment was terminated effective June 11, 2010 based on the RIF selections and defendant's failure to offer them alternative positions.

84. Defendant used selection procedures that had an adverse age impact against older employees when they identified the 115 incumbent employees who would receive RIF notices in May 2010.

85. Defendant used selection procedures that had an adverse impact based on age when it selected 38 individuals, including 20 outside hires to employ in the FSW job title during the summer of 2010.

86. Defendant used selection procedures that had an adverse age impact against older employees when it terminated the employment of 97 employees effective June 11, 2010.

87. The selection procedures defendant used were not supported by any validity study nor were they job related or consistent with business necessity.

88. To the extent that defendant had any legitimate business purpose in carrying out the selection procedures detailed above, it could have accomplished such purpose through less discriminatory means, including elimination of an unnecessary education requirement, a preference for qualified employees on a RIF list and a reduction in new hires to allow headcount to shrink through attrition.

89. Defendant knew the age of the employees who would lose their positions as a result of the RIF and realignments.  It has a statutory obligation to determine the disparate impact of its selection procedures and should have known that the procedures it selected had a more severe age impact than other procedures it could have used to accomplish any legitimate, job related business purpose.  Defendant selected the RIF class and imposed the education selection criterion with full knowledge of the age impact of the procedures it chose.

90. Defendant fired 97 employees, including plaintiffs, on June 11, 2010 while re-hiring a number of employees into positions with functional duties that members of the plaintiff class could have performed, with full knowledge that its action had an

adverse age impact and  that it was firing older employees who were replaced with younger employees.

91. Older plaintiffs, and all members of the RIF class were harmed by defendant's unlawful conduct.

## SECOND CLAIM FOR RELIEF: RACE DISCRIMINATION

### Violations of D.C. Code 2-1402 and 42 U.S.C. 2000e-2

92. Plaintiffs incorporate the allegations of paragraphs 1 to 91  above as if fully set forth herein.

93. Except for Plaintiff Laura Smart, see par.46, who is a white woman, and Plaintiff Luz Lagaris, who is Hispanic, the Plaintiffs listed in paragraphs 9-55 are African American.

94. Plaintiffs have met the administrative prerequisites for suit under Title VII.  In July and August, 2010, Plaintiffs Ajakaiyie and Morris filed charges with the U.S. Equal Employment Opportunity Commission in its Washington, D. C. Field Office alleging discriminatory conduct by the Defendant in the design and implementation of the Reduction- in- Force and Realignment of May 6 and June 11, 2010.  Other Plaintiffs also filed charges with the EEOC. More than 180 days elapsed since at least one of the charges had been mailed from the Justice Department to the plaintiffs on March 14 or 15, 2011.  The charges included class based allegations and provided defendant with adequate notice of the claims of all plaintiffs.

95.  Plaintiffs suffered an adverse job action and were injured when defendant selected their positions for elimination prior to May 6, 2010.

96.  Plaintiffs suffered adverse job actions and were injured when they were denied available positions in the FSW job category and in other positions filled during FY 2010-11.

97.  Plaintiffs suffered additional harm when their employment was terminated effective June 11, 2010.

98.  Defendant used selection procedures that had an adverse race impact against African American employees when they identified the 115 incumbent employees who would receive RIF notices in May 2010.

99.  Defendant used selection procedures that had an adverse that had an adverse race impact against African American employees when it selected 38 individuals, including 20 outside hires to employ in the FSW job title during the summer of 2010.

100.  Defendant used selection procedures that had an adverse race impact against African American employees when it terminated the employment of 97 employees effective June 11, 2010.

101.  On information and belief, defendant filled other positions in FY 2010-2011 for which one or more plaintiffs would have qualified using selection procedures that had a disparate racial impact.

102.  The selection procedures defendant used were not supported by any validity study nor were they job related or consistent with business necessity.

103.  To the extent that defendant had any legitimate business purpose in carrying out the selection procedures detailed above, it could have accomplished such purpose through less discriminatory means.

104.  Defendant knew or should have known the race of the employees who would be

affected when it chose to use discriminatory selection procedures for the RIF, for the selection of new hires and for the termination of plaintiffs' positions.

105.     Plaintiffs were harmed by defendant's unlawful race discrimination in employment.

## CLASS ACTION ALLEGATIONS

106.     Plaintiffs expect to seek certification of a class that includes all of the 115 individuals who held jobs selected for RIF as described in paragraph 4.

107.     The class may include subclasses as follow:

    a.   Class members who are African American.  This subclass includes some 107 individuals, 18 of whom were re-hired as described in paragraph 63 above.  All 107 were selected by defendant for RIF and 89 of these lost their jobs as a result of the RIF and rehire processes.

    b.   Class members who were older at the time of the RIF.  Plaintiffs will define a specific age when the class certification motion is filed. Defendant has represented facts indicating that  86 Class members were over 40 at the time they were selected for  RIF of whom 8 were re-hired as described in paragraph 63.  This subclass includes 78 individuals who lost their jobs as a result of the RIF and rehire process.

108.     The class, with 115 members is sufficiently numerous that joinder of all plaintiffs is impractical.  Significant efficiencies will be realized by adjudication of common questions relating to adverse race and age impact in defendant's selection of employees for RIF;  and in defendant's selection of employees to fill positions that effectively replaced the employees selected for RIF.

109.   This action raises common questions of fact and law.  Specifically:

    a.   Whether the selection of employees for RIF had a significant race and age impact and was not justified by business necessity; and

    b.   Whether the selection of employees to fill positions that effectively replaced employees selected for RIF has a significant race and age impact and was not justified by business necessity.

    c.   Whether the employees who were subject to the RIF should be entitled to reinstatement and back pay, priority for re-hire or simple damages. Because none of the employees was selected for RIF based on individual characteristics, and because the RIF occurred in a discrete time period, the need for individualized damages hearings will be limited.

    d.   A common issue regarding the college degree prerequisite placed on the FSW hiring in June 2010 is raised for a larger proportion of the named plaintiffs.  After initial discovery, plaintiffs will determine whether the subset of class member who did not meet that requirement and who were otherwise likely candidates for those jobs is appropriate for a third subclass.

110.   Named plaintiffs include individual representatives whose claims are typical of the claims of all class members with regard to each common question.

111.   Named plaintiffs include individuals who are adequate representatives of the class and have retained experienced class counsel who have served as class counsel in other cases.

112.   Resolution of the common questions on a class basis is an efficient use of judicial

resources and the resources of the parties.

113.    No named plaintiff has interests in conflict with other members of the RIF class

with regard to the common questions.

114.    Defendant acted on grounds that apply to all class members when it selected them

for RIF in May 2010 and it acted on grounds that apply to 97 of the class members

when it terminated their employment in June 2010.  Certification of questions relating

the legality of the RIF and appropriate injunctive relief to remedy the unlawful

conduct are appropriate for certification under Rule 23(b)(2).

115.    Questions of law and fact applicable to the class predominate over individualized

questions regarding the amount of back pay and damages each class member has

suffered as a result of the conduct found to be unlawful.  Because no class member

was selected for RIF or discharged based on individual performance or qualification

questions, common questions can be certified with regard to individual as well as

class liability.  The need for individualized damage evidence is unlikely to

predominate over class issues.  Certification of a damages class under Rule 23(b)(3)

is appropriate.

116.    This Court may also certify specific issues for class treatment pursuant to Rule

23(c)(4).  The issues currently scheduled for phase I discovery are particularly

appropriate for class treatment as are phase II issues relating to business necessity.

117.    No class member appears to have a significant interest in individually controlling

the litigation.  Almost half of the proposed class members are already named

plaintiffs.

118.    Plaintiffs are not aware of any other litigation concerning the specific controversy

at issue in this case.  Other issues relating to the RIF have been raised in an

administrative proceeding, but the claims raised in this action are not part of that

proceeding.

119.    There is no good reason to bring new actions concerning the issues in this case in

another forum.  All of the events occurred in the District of Columbia.

120.    Plaintiffs are not aware of any unusual difficulties in managing this action.  Class

members have already been identified and all of them were affected by the same

decisions at the same time.  Individual issues will arise only in regard to the

calculation of damages and specific efforts to mitigate by seeking new positions after

the RIF notice.


**REQUEST FOR RELIEF**

Wherefore, Plaintiffs request that this Court 1)Grant class certification under Rule

23, F.R.C.P. and  2) Find that Defendant has violated the equal employment opportunity

rights of the Plaintiffs and members of the class, and 3) Enter an injunction prohibiting

the Defendant from engaging in discharges from employment of the kind which harm

older and African American employees at a significantly higher rate than younger

employees and non African-American employees, and prohibiting the Defendant from

using a Bachelor's Degree as a requirement for employment as a SSA or FS

or other similar position and 4) Require the Defendant to grant make whole relief

including re-employment of the Plaintiffs and members of the class and back pay and

interest, and 5) Upon a finding of purposeful discrimination enter awards for

compensatory damages as a result of having been illegally discharged and 6) enter an

order directing the payment of costs of litigation, including expert witness fees and

Attorneys' fees to the attorneys for Plaintiffs in this Case, and 7) Grant such other relief

as may be warranted.

JURY TRIAL

Pursuant to Rule 38, F.R.C.P., Plaintiffs request a jury trial on their claims under

the Human Rights Act and under Title VII of the Civil Rights Act.


        _Joshua N. Rose /s/_____
        Joshua N. Rose  *josh@roselawyers.com*
        David L. Rose  *daver@roselawyers.com*
        Rose Legal Advocates, P.C.
        1726 M Street, N.W., Suite 203
        Washington D.C. 20036
        202 769-5860
        Attorney for the Plaintiffs

        Donald M. Temple
        Temple Law Firm
        1101 15th St., Suite 910
        Washington DC 20005
        (202) 628-1101
        (202) 628-1149
        Attorney for the Plaintiffs

May __, 2013