**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| RONDA L. DAVIS *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 10-1564 (RC) |
| | : | | |
| v. | : | Re Document No.: | 72 |
| | : | | |
| DISTRICT OF COLUMBIA CHILD AND | : | | |
| FAMILY SERVICES AGENCY *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SANCTIONS

## I. INTRODUCTION

In this putative class action lawsuit, Plaintiffs, former employees of the District of

Columbia Child and Family Services Agency, allege that their employment was terminated as

part of a discriminatory reduction in force — namely, that the agency's imposition of a

bachelor's degree requirement for the position of "Family Social Worker" was a pretextual

reason for terminating the putative class members based on their race and/or age. More than

three years after this litigation began, the parties still have not completed the class certification

phase. Instead, the parties remain mired in discovery disputes relating to Plaintiffs' failure to

produce court-ordered discovery relevant to fundamental class certification issues.

Currently pending before the Court is the District of Columbia's (the "District") motion

for sanctions, in which the District seeks monetary, evidentiary, and/or terminating sanctions

pursuant to Federal Rule of Civil Procedure 37. *See generally* Def.'s Mot. for Sanctions, Dec.

17, 2013, ECF No. 72. For the reasons set forth below, the Court will grant the District's motion

and order monetary sanctions against Plaintiffs' attorneys, David Rose and Donald Temple, in the amount of $4,629.50.

## II. BACKGROUND

At the outset of discovery in this action, the Court limited the scope of appropriate discovery topics to four questions, which the Court and the parties refer to as "Phase I" issues: (1) the existence and statistical validity of group-based disparities caused by the reduction in force and/or the education requirements for Family Social Workers; (2) Plaintiffs' exhaustion of their administrative remedies; (3) the provision of notice in accordance with D.C. Code § 12-309; and (4) the appropriateness of class certification. *See generally* Sched. Order, Apr. 4, 2013, ECF No. 59. Phase I discovery closed on January 24, 2014, but there remain a number of open discovery disputes that the District brings to the Court's attention through its motion for sanctions. *See* Min. Order, Nov. 21, 2013.

### A. First Set Of Interrogatories

The District served its first items of written discovery "[s]hortly after discovery commenced" in early 2013. *See* Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 3. The discovery included a set of interrogatories and requests for production. *See id.* On approximately June 4, 2013, Plaintiffs provided the District with written responses and about 200 pages of documents. *See id.* Interrogatory number 8 asked each Plaintiff to "describe in detail your educational background since high school, including the name of each school or institution you attended, the dates of your attendance, your field(s) of study, and any degree earned." Def.'s Mot. Sanctions, ECF No. 72-2, at 2 (letter from Chad Naso to Joshua Rose, with Donald Temple cc'd, Sept. 6, 2013). Plaintiffs objected to the interrogatory and refused to answer on the basis of

relevancy.  *See id.*  The interrogatory answers that Plaintiffs did provide were not verified by individual signatures.  *See id.* at 1.

On November 7, 2013, the Court held a telephonic status conference to address the parties' disputes over written discovery.  The Court found that the information sought through interrogatory number 8 was relevant to Phase I discovery issues and ordered that Plaintiffs respond to the request by December 9, 2013.  *See* Min. Order, Nov. 7, 2013.  When asked by the Court at a April 10, 2014, status hearing whether Plaintiffs had supplied the District with answers to interrogatory number 8, attorney David Rose, lead counsel for the putative class, restated his argument that this interrogatory is not relevant.  Mr. Rose then confirmed that he had not yet provided the District with the required answers.[1]

## B.  Right To Sue Letters

Also among the District's initial discovery items was a request for the production of Plaintiffs' "right to sue" letters.[2]  *See* Def.'s Req. Prod. No. 9, ECF No. 89-1.  As part of their June 4, 2013, document production, Plaintiffs produced Equal Employment Opportunity Commission ("EEOC") charges signed by Zacchaeus T. Ajakaiye and Darius Morris on behalf of the putative class but did not produce any "right to sue" letters with respect to the charges.  *See*

---

[1]    Plaintiff Ernest Hunter, represented by attorney David Branch, submitted his answers to the District's interrogatories on January 22, 2014.  Besides being filed past the Court's deadline, the answer to interrogatory number 8 appears to be lacking in the necessary details and did not include any documents.  *See* Def.'s Suppl. Mem. Supp. Mot. Sanctions, ECF No. 80, at 4-5; *see also* ECF No. 80-1 (Hunter's Suppl. Answer to Interrog. 8).

[2]    Generally, there are two prerequisites to maintaining a Title VII race discrimination claim in a district court.  First, a plaintiff must timely file a charge with the EEOC, and second, she must receive from the EEOC a "right to sue" letter before filing a civil complaint.  *See* 42 U.S.C. § 2000e–5(b), (e), (f); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Bell v. Redding*, 539 F. Supp. 2d 423, 424 (D.D.C. 2008).  Absent a showing that a plaintiff has exhausted her administrative remedies, her claims will be dismissed.  *See Jones v. Dist. of Columbia*, 273 F. Supp. 2d 61, 64 (D.D.C. 2003) (dismissing without prejudice Title VII claims of plaintiffs who "failed to make any showing of administrative exhaustion (*i.e.*, a 'right to sue' letter)").

Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 3. On September 6, 2013, the District sent Plaintiffs' counsel a meet-and-confer letter outlining the deficiencies in their discovery responses, including the failure to produce the "right to sue" letters. *See* Def.'s Mot. Sanctions, ECF No. 72-2, at 1 (letter from Chad Naso to Joshua Rose, with Donald Temple cc'd, Sept. 6, 2013).

Following the November 7, 2013, conference, the Court ordered Plaintiffs to produce the "right to sue" letters, to the extent they exist at all, by December 9, 2013. *See* Min. Order, Nov. 7, 2013. In briefing on February 26, 2014, more than two months after they were ordered to produce the letters, Plaintiffs informed the Court that they had requested the letters but conceded that they failed to meet the discovery deadline. *See* Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84, at 7. To date, Plaintiffs have produced only one letter, that of Plaintiff Darrius Morris. *See* Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84-1. Indeed, at the April 10, 2014, status hearing, attorney David Rose informed the Court that he had not yet requested the "right to sue" letters from every named Plaintiff, and he could not tell the Court which Plaintiffs may or may not have the letters. Mr. Rose also informed the Court that the Plaintiffs he contacted did not look hard for the letters that may be in their possession. Thus, although the failure to provide the letters may be the fault of the individual Plaintiffs, it appears that, at the very least, counsel has made an inadequate inquiry with his clients regarding the existence of these documents.

### C. Signed Verifications

Federal Rule of Civil Procedure 33(b)(5) requires that "[t]he person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections." On September 6, 2013, the District sent Plaintiffs' counsel a meet-and-confer letter

outlining the deficiencies in Plaintiffs' responses to the first set of interrogatories, including the missing interrogatory verifications. *See* Def.'s Mot. Sanctions, ECF No. 72-2, at 1 (letter from Chad Naso to Joshua Rose, with Donald Temple cc'd, Sept. 6, 2013). Plaintiffs did not resolve this issue on their own, so on November 7, 2013, the Court ordered them to provide the verifications by December 9, 2013. *See* Min. Order, Nov. 7, 2013. Plaintiffs failed to meet this deadline. *See* Def.'s Mem. Supp. Mot. Sanctions, ECF No. 72-1, at 3.

At the April 10, 2014, discovery status hearing, the Court asked David Rose whether he had provided to the District the verifications for each Plaintiff. Mr. Rose responded that he did not know why the signed verifications were important, and he told the Court that he was unsure if signed statements are required by the rules of civil procedure. At the same time, Mr. Rose conceded that he still had not complied with this requirement four months after the Court's deadline.

### D. Second Set Of Interrogatories

On September 6, 2013, the District served a second set of interrogatories. *See generally* Def.'s Mot. Sanctions, ECF No. 72-3 (Def.'s 2d Interrogs.). Included in this set was an interrogatory asking Plaintiffs to "[i]dentify the class representatives for each class and/or subclass that Plaintiffs will seek to certify in this matter." *See id.* at Interrog. No. 1. Plaintiffs did not respond to the second set of interrogatories, despite the District's emails following up on the matter. *See* Def.'s Mot. Sanctions, ECF No. 72-4, at 2 (e-mails from Chad Naso to David Rose, Oct. 3-16, 2013). On October 28, 2013, Plaintiffs' counsel sent the District an email stating that "Darrus [sic] Morris is expected and and [sic] Cynthia Dudley are to be a class agents [sic] for the class of older employees; and Trina M. Robinson expected [sic] to be a class agent for the class of black workers harmed by the RIF." *Id.* at 8 (e-mail from David Rose to Chad

Naso, with Donald Temple cc'd, Oct. 28, 2013). The District replied that it did not consider this email to be a formal response to the interrogatories. *See id.* at 7 (e-mail from Chad Naso to David Rose, with Donald Temple cc'd, Oct. 29, 2013).

On November 7, 2013, the Court ordered Plaintiffs to respond to the District's second set of interrogatories by December 9, 2013. *See* Min. Order, Nov. 7, 2013. In a telephone conversation on or around January 17, 2014, which was one week before the close of Phase I discovery, Plaintiffs notified the District that they intended to designate Plaintiff Karone Gray as an additional class representative. *See* Def.'s Suppl. Mem. Supp. Mot. Sanctions, ECF No. 80, at 11. The District, however, was unable to depose Ms. Gray before the close of Phase I discovery,[3] *see id.* at 3, and Plaintiffs did not file a formal response to the interrogatory before the discovery deadline. Nevertheless, the District deposed Plaintiffs Darius Morris and Trina Robinson, and sought to depose Cynthia Dudley, before the close of discovery. *See id*. The District also deposed Rodney Williams and Carla Johnson. *See id.*

### E. Expert Reports

Under the case schedule, Plaintiffs' expert reports were due on October 30, 2013. *See* Am. Sched. Order, ECF No. 70. On October 17, 2013, the District emailed Plaintiffs' counsel to inquire about the status of the expert disclosures. *See* Def.'s Mot. Sanctions, ECF No. 72-4, at 5 (e-mail from Chad Naso to David Rose and Donald Temple, Oct. 17, 2013). Specifically, the District asked whether an unsigned declaration by Dr. Paige Munro that Plaintiffs provided to the District in April 2012 constituted their disclosures under Rule 26(a)(2)(B). *See id.*; *see also* Def.'s Mot. Sanctions, ECF No. 72-5 (1st Munro Decl.). The District noted that the declaration

---

[3] In briefing submitted to the Court on May 21, 2014 — five months after the December 9, 2013, deadline for responding to the second set of interrogatories — Plaintiffs indicated that Ms. Gray would not be designated as a class representative. *See* Pls.' Resp. Suppl. Mem. Supp. Mot. Sanctions, ECF No. 95, at 1.

did not include a list of Dr. Munro's publications from the previous ten years, a list of all other

cases in which Dr. Munro testified as an expert in the past four years, or a statement of

Dr. Munro's compensation for her work on the case.  *See* Def.'s Mot. Sanctions, ECF No. 72-4,

at 5 (e-mail from Chad Naso to David Rose and Donald Temple, Oct. 17, 2013).  The District did

not receive a response.

On November 18, 2013, the District again contacted Plaintiffs' counsel to request the

expert disclosures.  *See* Def.'s Mot. Sanctions, ECF No. 72-6, at 1 (e-mail from Chad Naso to

David Rose, with Donald Temple cc'd, Nov. 18, 2013).  Later that day, Plaintiffs' counsel

responded that he was going to forward an "up-to-date version" of Dr. Munro's declaration, but

counsel only followed up by including a scanned, signed copy of page five of the declaration.

*See id.* (e-mail from Mark Rose to Chad Naso, Nov. 18, 2013).  The content of this scanned page

differed from the content of Dr. Munro's initial declaration, dated April 2012.  *Compare id.* at 2

(2d Munro Decl.), *with* Def.'s Mot. Sanctions, ECF No. 72-5 (1st Munro Decl.).  Despite not

timely receiving a proper copy of Dr. Munro's declaration, the District served the report of its

rebuttal expert, Dr. Stephen Bronars, on January 8, 2014.  *See* Def.'s Suppl. Mem. Supp. Mot.

Sanctions, ECF No. 80, at 3.

In briefing regarding the District's motion for sanctions, Plaintiffs asserted on February

26, 2014, that Dr. Munro has authored no publications at any time and has not testified at trial or

been deposed as an expert in the past four years.  *See* Pls.' Suppl. Resp. Mem. Supp. Mot.

Sanctions, ECF No. 84, at 5.  Plaintiffs do not explain why they did not provide this information

before October 30, 2013, although they did eventually provide the District with Dr. Munro's

résumé and hourly compensation information, according to counsel's statement at the April 10,

2014, status hearing.  Plaintiffs, however, do attempt to justify their noncompliance by

explaining that they "represent largely an undercapitalized group, having lost their source of income and thus have an inherent economic disadvantage in the prosecution of this claim." *Id.* at 6. They further argue that "Plaintiffs' [c]ounsel have adjusted and maximized their limited resources to ensure compliance with discovery and other deadlines." *Id.*

On May 13, 2014, Plaintiffs submitted a significantly revised expert report by Dr. Munro. *See* ECF No. 93. Dr. Munro explained that this new report was in response to discrepancies between the data she relied on in her original report and the data in Dr. Bronars' rebuttal report for the District. *Id.* at 1. Plaintiffs, however, did not request leave from the Court to file the report or to reopen expert discovery, and they made no attempt to explain whether good cause existed for the Court to permit them to file a late report from Dr. Munro. As a result of this tardy filing, the District now likely must obtain a revised report from its expert and engage in further expert discovery many months after the discovery window should have shut.

### F. Dudley Deposition

On November 13, 2013, the District properly served a notice of deposition for Plaintiff Cynthia Dudley, setting the deposition date for December 12, 2013. *See generally* Def.'s Mot. Sanctions, ECF No. 72-7 (Dudley Dep. Notice). December 12th arrived, and Ms. Dudley did not appear for her deposition. *See* Def.'s Mem. Supp. Mot. Sanctions, ECF No. 72-1, at 7. According to Plaintiffs' counsel, "[b]ased upon communication dynamics, [Ms.] Dudley was not informed of her December 17, 2013 [sic] deposition and therefore did not attend." Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84, at 2. Plaintiffs explain that the parties attempted to reschedule the deposition, but because Plaintiffs later informed the District that Ms. Dudley would not serve as a class representative, the District no longer pursued the deposition. *See id.*; Def.'s Reply Supp. Mot. Sanctions, ECF No. 85, at 3. The court reporter billed the District

$175.00 for the late cancellation of Ms. Dudley's deposition. *See* Def.'s Mot. Sanctions, ECF No. 72-8 (Olender Reporting, Inc. Invoice).

### III. MOTION FOR SANCTIONS

On December 17, 2013, the District filed a motion for sanctions, citing many of the above-described discovery issues. *See generally* Def.'s Mot. Sanctions, ECF No. 72. Plaintiffs' response was due on December 31, 2013, *see* D.D.C. Civ. R. 7(b), but they neither filed a brief nor moved for an extension of time by that deadline.[4] On January 15, 2014, Plaintiff Ernest Hunter, through individual counsel David Branch, moved for an extension of time to respond to the District's motion. *See generally* Hunter's Mot. Ext. Time, ECF No. 75. The Court granted an extension over the District's objection, and on January 22, 2014, Mr. Hunter filed a two-page response to the District's motion for sanctions stating that he "was unaware of the court's November 7, 2013 order until he retained counsel, but has now responded to the discovery requests." Hunter's Opp'n Mot. Sanctions, ECF No. 78, at 1. The District also received Mr. Hunter's verified responses to interrogatory number 8 and the second set of interrogatories on January 22, 2014, but it did not receive verifications from Mr. Hunter for the remaining interrogatories in the District's first set. *See* Def.'s Suppl. Mem. Supp. Mot. Sanctions, ECF No. 80, at 3-5.

On January 29, 2014, the Court held a hearing to address the District's motion and receive an update on the status of discovery. In attendance were Chad Naso, counsel for the District, and David Rose, counsel for the putative class. David Branch and Donald Temple did

---

[4] Plaintiffs' counsel, David Rose, states that he "drafted their Motion for Extension of Time and Opposition to Motion for Sanctions and to Dismiss, but [was] unable to file both in a timely manner due to problems with the Electronic Court Filing account; the issue was resolved on February 14, 2014" — more than one month after the opposition was due. Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84, at 3.

not attend.  At the hearing, the parties indicated that, aside from Mr. Hunter's interrogatory responses, no further discovery progress had been made.  Nonetheless, the Court indicated that dismissal may be too drastic a sanction and asked the parties to submit further briefing "updating the Court as to any discovery progress and suggesting alternatives to default as a sanction[.]" Min. Order, Jan. 29, 2014.

The District's supplemental memorandum restated its position that terminating sanctions were appropriate, but the District also suggested evidentiary and monetary sanctions as alternatives.  *See generally* Def.'s Suppl. Mem. Supp. Mot. Sanctions, ECF No. 80.  Plaintiffs responded by arguing that dismissal of the case, or of any particular Plaintiff, would be too harsh a sanction.  *See generally* Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84.  Plaintiffs also noted that they were in the process of obtaining copies of the "right to sue" letters from the Department of Justice and asked that discovery be reopened for the limited purpose of deposing Ms. Gray, Dr. Munro, and Dr. Bronars.  *See id.* at 7.  On March 6, 2014, the District filed a reply memorandum arguing that Plaintiffs had not demonstrated good cause to reopen discovery and reaffirming their request for sanctions.  *See* Def.'s Reply Supp. Mot. Sanctions, ECF No. 85, at 5-7.

On April 10, 2014, the Court held a second hearing on the District's motion.  The parties reported no further discovery progress since the January 29 hearing.  This time, attorneys from all three law firms representing Plaintiffs were present.  When questioned by the Court about the progress of discovery, David Rose appeared confused and was unable to answer basic questions about the status of the case.  For example, when asked whether he had provided answers to interrogatory number 8, Mr. Rose responded that this question was not relevant.  Of course, the Court had ruled months prior that the interrogatory was in fact relevant and Plaintiffs were

required to answer.  *See* Min. Order, Nov. 7, 2013.  When the Court pushed Mr. Rose on the issue, he expressed further confusion, stating that he thought he had provided the answers to the District already and offering to do so now if the District says it never received them.

Mr. Rose provided the same confused response to the Court's questioning about the signed verifications for the interrogatory answers.  He told the Court that he did not know why the signed verifications were important, and he did not know if signed verifications were required by the rules of civil procedure.  At the same time, Mr. Rose conceded that he had not complied with this requirement.  Similarly, when asked whether he had requested the "right to sue" letters from every Plaintiff, Mr. Rose again expressed confusion, stating that he thought he sent an e-mail to some Plaintiffs, but he was not sure.  He also conceded that he had not talked to every Plaintiff about providing the letters.  Mr. Rose followed up that after his son and law partner left the firm in September 2013, he was left with limited time and resources.  Finally, upon questioning about issues surrounding the expert report from Dr. Munro, Mr. Rose was unable to answer where the rest of the report was for the signature page he produced in 2013, which clearly did not match the April 2012 expert report.

Following the hearing, the Court expressed deep concern about the ability of Mr. Rose to adequately prosecute this action and instructed all Plaintiffs' counsel to meet, confer, and devise a plan to jointly handle the case going forward.  *See* Min. Order, Apr. 10, 2014.  The Court ordered Plaintiffs' counsel to file a status report regarding their proposed plan by May 12, 2014, and stayed the case until that date.  *See id*.

On May 12, 2014, attorneys David Branch and Donald Temple filed separate status reports.  Attorney David Rose, counsel for the punitive class, did not file a status report or sign on to the other reports, although the individual reports indicate that Mr. Rose participated in

discussions with counsel. Mr. Branch explained that after conferring with Mr. Temple and Mr. Rose, it was not agreed that he would represent class members other than Ernest Hunter. *See* Status Report, ECF No. 91. Separately, Mr. Temple explained in his report that he would continue to represent four clients "and possibly 1-2 additional plaintiffs in this case."[5] *See* Status Report, ECF No. 92. Mr. Temple also stated that "the case may be consolidated for discovery purposes only, and separated for trial purposes given the Plaintiffs' collaborative limited financial resources to litigate this case." *Id*. Neither counsel provided further details about how they intended to jointly prosecute the case moving forward, despite the Court's order to do so.

On May 13, 2014, the Court issued a Minute Order requesting supplemental briefing from the parties regarding additional facts relevant to the District's motion for sanctions that may have occurred since the last set of briefs were filed. *See* Min. Order, May 13, 2014. In its supplemental brief, the District stated that since the April 10, 2014, status conference, Plaintiffs had not provided additional discovery pursuant to the Court's orders. *See* Def.'s Notice, May 21, 2014, ECF No. 94, at 1. David Rose filed a supplemental brief on behalf of all Plaintiffs in which he argued that the District's request for individual declarations from each Plaintiff is duplicative of the information provided by the District in its Answer to the Third Amended Complaint regarding the identity and characteristics of the individual Plaintiffs. *See* Pls.' Supp.

---

[5]    Donald Temple entered an appearance in this case in February 2013, but which Plaintiffs he represented at certain times is somewhat unclear from the record. In the First Amended Complaint, Mr. Temple is listed as counsel for "Dudley *et al*.," and the caption indicated that Cynthia Dudley's action was being consolidated with the action of Rhonda Davis and others, who were represented by Mr. Rose. *See generally* 1st Amend. Compl., ECF No. 21-1. In the Second and Third Amended Complaints, however, Mr. Temple is listed as an attorney for all Plaintiffs, but the captions still indicated that the Dudley action was consolidated with the Davis action. *See generally* 2d Amend. Compl., ECF No. 58; 3d Amend. Compl., ECF No. 66. In his May 12, 2014, status report, Mr. Temple stated that he represents only four clients: Cynthia Dudley, Karone Gray, David Hailes, and Lorraine Kelly. *See* Status Report, ECF No. 92.

Brief, May 21, 2014, ECF No. 95, at 1-2 (citing Def.'s Answer to 3d Am. Compl., ECF No. 67). Mr. Rose also argued for why Dr. Munro qualifies as an expert and indicated that Dr. Munro's résumé was provided to the District. *Id.* at 2. He did not address the other discovery issues or explain what progress Plaintiffs had made toward satisfying their outstanding discovery obligations.

## IV.  LEGAL STANDARD

### A.  Rule 37 Sanctions

The Federal Rules of Civil Procedure allow a court to impose sanctions for a party's failure to cooperate during the course of discovery. *See generally* Fed. R. Civ. P. 37. Rule 37 sets forth specific guidelines for the imposition of sanctions when a party fails to disclose information or witnesses, answer interrogatories, attend a deposition, or comply with a court order. The district court has broad discretion to impose sanctions under this rule, and the "central requirement … is that 'any sanction must be just.'" *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807-08 (D.C. Cir. 1996) (quoting *Ins. Corp. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 707 (1982)). As such, "[t]he choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." *Id.* at 808 (citation omitted).

The range of available sanctions under Rule 37 includes taking facts as established, striking answers or defenses, precluding the introduction of evidence, striking pleadings, dismissing claims, default judgment, or holding a party in contempt. *See* Fed. R. Civ. P. 37(b)(2); *see also Law Office of Azita Mojarad v. Aguirre*, No. CIV.A. 05-0038, 2006 WL 785415, at *10 (D.D.C. Mar. 27, 2006). Further, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure [to comply with a discovery order], unless the failure was substantially

justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(c). The possible sanctions listed in Rule 37 are not mutually exclusive, and the Court may impose multiple sanctions at the same time. *See Atkins v. Fischer*, 232 F.R.D. 116, 127 (D.D.C. 2005) (citation omitted).

## B. The Court's Inherent Power To Impose Sanctions

"In situations where a party has committed discovery abuses but Rule 37 does not apply, a court may instead issue appropriate sanctions under its inherent power." *Parsi v. Daioleslam*, 286 F.R.D. 73, 77 (D.D.C. 2012) (citing *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)). Similar to Rule 37, the Court's inherent power to issue sanctions includes the ability to impose "fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence." *Shepherd*, 62 F.3d at 1474. When selecting the appropriate sanction, the Court must "properly calibrate the scales to ensure that the gravity of an inherent power sanction corresponds to the misconduct." *Id*. at 1479 (citations omitted).

## V.  ANALYSIS

As explained above, Plaintiffs clearly have been and continue to be in violation of multiple Court discovery orders. Plaintiffs have missed or ignored discovery deadlines, not provided appropriate documentation or answers to discovery requests, and generally failed to comply with the Federal Rules of Civil Procedure. The first complaint in this matter was filed in September 2010, just months after the allegedly wrongful conduct at issue. *See generally* Compl., ECF No. 1. Phase I discovery started in early 2013 on a set of limited but important issues. Yet more than a year later, and more than three years since this action began, significant deficiencies remain regarding a number of critical discovery topics.

Plaintiffs' inability to comply with discovery in a timely and effective manner has slowed the progress of this action to a snail's pace and hindered the District's ability to develop fully its defense, such as preparing an expert report and determining which Plaintiffs have exhausted their administrative remedies. Plaintiffs' failures also have delayed class certification, which is a critical next step in adjudicating this action.[6] And perhaps even more troubling, Plaintiffs' counsel have given this Court no reassurances that they are capable of resolving these discovery issues moving forward, despite repeated — and increasingly pointed — attempts by the Court to nudge them in the right direction. As such, there is no doubt that sanctions under Rule 37 are deserved, and the Court next must determine what those sanctions ought to be.

## A. Dismissal Or Other Sanctions Against The Merits Of Plaintiffs' Claims Are Inappropriate

"[I]t is well-established that '[u]nder Rule 37, the district court has broad discretion to impose sanctions for discovery violations[,]' and to determine what sanctions to impose." *Kister v. Dist. of Columbia*, 229 F.R.D. 326, 329 (D.D.C. 2005) (quoting *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996)). Due to the foregoing violations, the District has requested several different sanctions against Plaintiffs, including dismissing claims, preventing Plaintiffs from presenting certain evidence of discrimination, treating critical facts as established,

---

[6] One prerequisite for class certification under Rule 23 is that the named representatives must "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). This requirement "necessitates an inquiry into the adequacy of representation, including the quality of counsel, any disparity of interest between class representatives and members of the class, communication between class counsel and the class and the overall context of the litigation." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006) (citation and quotation omitted). The Court continues to have serious concerns about counsel's ability and resources to represent the potential class of Plaintiffs. After repeated problems complying with discovery, missed deadlines, and other delays, counsel recently were offered an opportunity to meet, confer, and propose a plan for jointly prosecuting this case, *see* Min. Order, Apr. 10, 2014, but their cursory responses were far from convincing. *See* Status Report, ECF No. 91; Status Report, ECF No. 92.

excluding the expert report and expert testimony, and dismissing the action entirely. *See* Def.'s

Mem. Supp. Mot. Sanctions, ECF No. 72-1, at 8-10; Def.'s Suppl. Mem. Supp. Mot. Sanctions,

ECF No. 80, at 6-11.

As an initial matter, the Court must recognize that the discovery violations described

herein were committed by counsel for Plaintiffs, namely David Rose and Donald Temple, both

of whom have been involved in this case since the start of discovery. It nonetheless is within the

Court's power to dismiss the action or impose other sanctions against the merits of Plaintiffs'

claims even though the attorneys committed the misconduct. *See Shea v. Donohoe Const. Co.,*

*Inc.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986) ("When the misconduct of one party's attorney

prejudices the other party so severely as to make it unfair to require the other party to proceed

with the case, dismissal of the case, or any portion thereof, has been held appropriate.").

However, "outright dismissal even where the other party has been prejudiced may not be

appropriate where less drastic action is available to cure the harm." *Id.* at 1075. This is

especially true because "our [judicial] system favors the disposition of cases on the merits."

*Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186 (D.C. Cir. 1985); *see also Webb v. Dist. of*

*Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) ("Because disposition of cases on the merits is

generally favored, we have said that a default judgment must be a sanction of last resort, to be

used only when less onerous methods (for example, adverse evidentiary determinations or other

issue-related sanctions) will be ineffective or obviously futile." (citation and internal quotation

omitted)).

The central tenet of Rule 37 is that the sanction must be "just." *See Hildebrandt v.*

*Vilsack*, 287 F.R.D. 88, 94 (D.D.C. 2012). As such, the extreme sanction of dismissal is

warranted only when "(1) the other party has been 'so prejudiced by the misconduct that it would

be unfair to require [the party] to proceed further in the case,' (2) the party's misconduct has put 'an intolerable burden' on the court by requiring the court to modify its own docket and operations in order to accommodate the delay, or (3) the court finds it necessary 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Id.* (quoting *Webb*, 146 F.3d at 971). The Court finds that none of these conditions exist here, and dismissal therefore is inappropriate.

Although Plaintiffs' behavior has caused the District to waste time and money while defending this action, the District has not suffered the type of actual prejudice required for dismissing a case. Instead, "the fact that the other party has incurred costs due to the malfeasance will not ordinarily be enough to warrant dismissal, since the court may order the guilty counsel to pay a designated amount to the other party to cover his costs and inconvenience." *Shea*, 795 F.2d at 1075. Nor have Plaintiffs' discovery delays imposed an intolerable burden on the Court. Although the Court is frustrated by the time and energy it has spent babysitting discovery in the case — and has informed Plaintiffs' counsel several times to that effect — it remains capable of managing the delays in the future without prejudicing its own docket. *See Webb*, 146 F.3d at 975 (vacating and remanding the district court's default judgment order when, among other reasons, "it [was] not apparent … from the record … that the court's continued involvement in the discovery dispute would continue to call on far more resources into the future than the system should be required to allocate to the case."). Finally, the Court does not believe dismissal is necessary at this time to punish disrespect to the Court, egregious misconduct, or to prevent further violations in the future. *See Webb*, 146 F.3d at 975 (explaining that default is inappropriate when the party's discovery failures do not rise "to the level of flagrant or egregious misconduct"); *cf. Synanon Church v. United States*, 820 F.2d 421, 423, 428

(D.C. Cir. 1987) (affirming dismissal due to the party's "willful, deliberate and purposeful scheme" to destroy evidence (internal quotation omitted)).

When considering other penalties, the Court must remain cautious that "any alternative sanctions ordered in lieu of dismissal [do] not effectively amount to a default judgment." *Hildebrandt*, 287 F.R.D. at 98. The Court therefore does not find that dismissing specific claims or preventing Plaintiffs from presenting certain critical evidence is appropriate because doing so might effectively constitute a judgment on the claims without reaching the merits. *See Johnson v. BAE Sys., Inc.*, No. 11-cv-02172, 2013 WL 6241135, at *12 (D.D.C. Nov. 27, 2013) (refusing to impose the "issue-related sanction of exclusion of all evidence of and damages for Plaintiff's alleged mental health conditions and treatments" because that "is the functional equivalent to dismissal") (internal quotations omitted).

The Court also does not find that precluding Plaintiffs from presenting their expert report and expert testimony at trial is appropriate when alternative, less severe sanctions are available, and when that expert discovery is critical to adjudicating the merits of Plaintiffs' claims. Further, the District will have an opportunity to rebut the revised expert report and conduct discovery on Plaintiffs' expert, including through deposition, if it so chooses. Again, in reaching this conclusion the Court is influenced by the fact that the expert discovery problems are the result of Plaintiffs' counsel, not the individual Plaintiffs, and the Court hesitates to punish the parties for errors outside their control, particularly when significant time and expense already has gone into preparing the expert report.

## B. Monetary Sanctions Are Appropriate

After considering the range of available sanctions, the Court concludes that monetary sanctions in the amount of the District's attorneys' fees and reasonable expenses are the just

penalty for the discovery violations in this case. The Court further concludes that these sanctions should not fall on the individual Plaintiffs because it is their counsel who have failed to meet the discovery obligations. *See Hildebrandt*, 287 F.R.D. at 99 (explaining that "imposing a monetary penalty on these plaintiffs for the misdeeds of their attorney would be unjust"). Rather, attorneys David Rose and Donald Temple have represented various Plaintiffs in this action throughout Phase I discovery, and neither has complied with the Court's discovery orders or demonstrated that they are capable of complying in the near future.[7] As such, the sanctions should fall on the attorneys directly.

When requesting attorneys' fees under Rule 37, the moving party bears the burden of proving that the request is reasonable. *See Kister v. Dist. of Columbia*, 229 F.R.D. 326, 329 (D.D.C. 2005) (citation omitted). If, however, the party opposing the fee request objects with specificity, the Court has discretion to adjust the fee award in light of those objections. *See id.* (citation and quotation omitted). "[G]enerally, the proper method of awarding attorneys' fees for a violation of Rule 37 is the lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended." *Kornegay v. AT&T*, No. CIV.A 05-0001, 2008 WL 4482970, at *2 (D.D.C. Sept. 29, 2008). A "near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded." *Cobell v. Babbitt*, 188 F.R.D. 122, 127 (D.D.C. 1999) (citation omitted).

---

[7] Attorney David Branch entered an appearance for Plaintiff Ernest Hunter on January 6, 2014. *See* Branch Notice of Appear., ECF No. 74. Mr. Branch immediately attempted to comply with discovery, *see* ECF No. 80-1 (Hunter's Supp. Answer to Interrog. 8), and has participated in briefing on the District's motion for sanctions. *See generally* Hunter's Opp'n Mot. Sanctions, ECF No. 78. Given that Mr. Branch joined this action late, represents only one Plaintiff, and has at least attempted to comply with discovery and engage in this matter, the Court concludes that he should not be held liable for the misconduct of Plaintiffs' other counsel. The Court therefore orders no sanctions against Mr. Branch at this time.

The District requests compensation at the hourly rates provided in the fee schedule commonly known as the "*Laffey* Matrix." *See* Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 10. This matrix, which derives its name from the decision in *Laffey v. Northwest Airlines Inc.*, 572 F. Supp. 354 (D.D.C. 1983), establishes the presumptive prevailing market rates in the District of Columbia for attorneys of varying experience levels. *See Embassy of Fed. Rep. of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013). In its briefing, the District provides that its attorney, Chad Naso, has five years of experience, so under the *Laffey* Matrix, his rate is $295.00/hour. *See* Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 10; Naso Decl., ECF No. 72-9, at 2-3. The District requests that the Court award attorneys' fees for the following activities related to Plaintiffs' discovery violations: 3.6 hours preparing for the deposition of Plaintiff Cynthia Dudley; 0.2 hours calling and speaking with attorney David Rose regarding Ms. Dudley's failure to appear for her deposition; and 11.3 hours researching and drafting the District's motion for sanctions. *See* Naso Decl., ECF No. 72-9, at 1-2. The District therefore requests fees for 15.1 billable hours, which, at a rate of $295.00/hour, equals a total award of $4,454.50 in attorneys' fees. *See* Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 10.

The District, however, does not point to case law in this circuit applying *Laffey* rates to government attorneys, who are paid a salary and do not charge fees based on an hourly rate or otherwise. Nevertheless, at least one example exists of this Court using the *Laffey* Matrix to establish the appropriate rates for the District's attorneys. In *Fowler v. District of Columbia*, the District submitted a request for attorneys' fees under the *Laffey* rates. No. CIV.A. 00-270, 2001 WL 1704308, at *1 (D.D.C. Aug. 16, 2001). This Court agreed with the District's proposed

methodology, explaining that "[w]hen an attorney works for the government or a public interest group, the court can apply market rates in setting the fees of that attorney." *Id*.

Cases in other circuits also support applying the relevant private market rate — which the *Laffey* Matrix provides — to government attorneys when calculating attorneys' fees for sanctions. For example, the U.S. Court of Appeals for the Eighth Circuit held in *United States v. Big D Enterprises, Inc.* that the prevailing private sector market rate applies to U.S. Department of Justice attorneys when calculating discovery sanctions under Rule 37. 184 F.3d 924, 936 (8th Cir. 1999). The U.S. Court of Appeals for the Fifth Circuit reached a similar conclusion when reviewing a district court's calculation of civil contempt sanctions, explaining that "[w]hen a court awards attorney's fees to the government as a sanction for an adverse party's improper conduct, … we treat the hourly rate in the local legal community as a benchmark for determining the amount of attorney's fees to be imposed." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 733 (5th Cir. 2004). Likewise, in *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, the U.S. Court of Appeals for the Third Circuit held that a district court did not abuse its discretion by using the prevailing market rate to determine the reasonable hourly fee for an Assistant United States Attorney when calculating Rule 11 sanctions. 855 F.2d 1080, 1092-93 (3d Cir. 1988); *see also NLRB v. Local 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 407 (2d Cir. 2006) (concluding that the Special Master properly calculated fees for National Labor Relations Board attorneys "using the prevailing market rate"); *Hamilton v. Daley*, 777 F.2d 1207, 1213 (7th Cir. 1985) (stating that fees for lawyers in the Cook County State's Attorney's Office "are based on reasonable billing rates in the relevant community, not net hourly earnings").

As noted above, this Court "has broad discretion under Rule 37 to impose sanctions for discovery violations and to determine what level of sanctions is appropriate." *Gordon v. Borigini*, 297 F.R.D. 1, 3 (D.D.C. 2013) (citations omitted).  Plaintiffs cursorily object that the District "did not make clear … the basis for its calculation of 'reasonable' attorneys' fees."  Pls.' Resp. Suppl. Mem. Supp. Mot. Sanctions, ECF No. 84, at 8.  Plaintiffs do not explain if they are objecting to the use of the *Laffey* Matrix, the amount of time the District's attorney spent on certain tasks, or some other unspecified issue.  In a subsequent motion, Plaintiffs concede that a monetary sanction is appropriate and suggest that $750.00 or $1,000.00 "would be sufficient penalty."  Pls.' Notice Suppl. Auth., ECF No. 86, at 2.  Plaintiffs do not explain how they calculated these figures.  Nevertheless, the District clearly has demonstrated the basis for its calculation, including its requested hourly rate and the time spent on each task, and Plaintiffs' generalized and halfhearted objections are hardly persuasive to the contrary.

The Court therefore concludes that the *Laffey* Matrix is a reasonable measurement for calculating the District's rates under Rule 37, and the Court will award the District $4,454.50 in attorneys' fees.  In addition, the Court will award the District its $175.00 expense for the court reporter when Cynthia Dudley failed to appear for her properly noticed deposition due to a lack of communication between Plaintiffs' counsel and their client.[8]  *See* Def.'s Mem. in Supp. Mot. Sanctions, ECF No. 72-1, at 10-11; Def.'s Mot. Sanctions, ECF No. 72-8 (Olender Reporting, Inc. Invoice); *see also* Fed. R. Civ. P. 37(d)(1)(A)(i) ("[A court] may, on motion, order sanctions if a party … fails, after being served with proper notice, to appear for that person's deposition.").

---

[8]    Again, Plaintiffs' counsel concedes that this error was due to his own failure to inform Ms. Dudley, rather than due to her failure to appear.  *See* Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84, at 2.  As such, it is appropriate that counsel, rather than Ms. Dudley, pay the cost.

Accordingly, the Court concludes that Mr. Rose and Mr. Temple are ordered to pay to the District a total of $4,629.50 in attorneys' fees and reasonable expenses as sanctions.

## VI.  DISCOVERY MOVING FORWARD

Due to the issues described above, discovery in this matter remains woefully incomplete, and Plaintiffs' responsibility to fulfill their many unmet discovery obligations does not end with this order.  Instead, Plaintiffs must provide the District with the answers and documentation responsive to its outstanding discovery requests moving forward, as the District clearly is entitled to this information as it builds a defense to this action.  The Court therefore will order — once again — that Plaintiffs shall provide the missing discovery within thirty days of this ruling.

Plaintiffs are reminded, moreover, that their failure to comply with discovery moving forward can and will result in more drastic sanctions than paying attorneys' fees and reasonable expenses.  The Court has hesitated to punish Plaintiffs for what largely are errors of their counsel, and the Court thus has opted for less severe sanctions at this time.  But if counsel fall short of their discovery obligations again, the Court will be forced to issue harsher sanctions that affect the merits of Plaintiffs' action, up to and including dismissal with prejudice.  *See Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) ("[D]ismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile." (citation and quotation omitted)).

The Court also will reopen discovery in this matter for the narrow purpose of expert discovery, including depositions.  This is because following Plaintiffs' late filing of a revised report from Dr. Munro, the District deserves an opportunity to prepare its own rebuttal report and depose Plaintiffs' expert.  Plaintiffs also will have an opportunity to depose the District's expert if they so choose.  Further, it appears that the District already has deposed the class

representatives for Plaintiffs, so opening discovery for that purpose is not required.  If, however, the District believes depositions of additional Plaintiffs are necessary, it may file an appropriate motion with the Court.

Finally, the Court will not reopen discovery so Plaintiffs can conduct Rule 30(b)(6) depositions.  *See* Pls.' Suppl. Resp. Mem. Supp. Mot. Sanctions, ECF No. 84, at 10.  Plaintiffs have had over a year to notice the depositions, and they have provided no reason for why the Court should reopen discovery for these depositions at this late stage or what they hope to accomplish if the depositions were to occur.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) ("The focus of a court's inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." (citation and quotation omitted)).  Plaintiffs' request therefore is denied.

## VII.  CONCLUSION

For the foregoing reasons, the District's motion for sanctions is granted and monetary sanctions are ordered against David Rose and Donald Temple, counsel for Plaintiffs, in the amount of $4,629.50.  Furthermore, the Court orders that Plaintiffs fulfill their outstanding discovery obligations to the District within thirty days of this decision.  The Court also orders that discovery is reopened for the limited purpose of conducting expert discovery.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  June 4, 2014                                         RUDOLPH CONTRERAS
                                                                       United States District Judge