**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RONDA L. DAVIS, *et al.*,     ) | |
|                 ) | |
|     and        ) | |
|                 ) | |
| CYNTHIA DUDLEY, *et. al.*,    ) | |
|                 ) | |
|     Plaintiffs,      ) | Civil Actions Nos. 10-1564, 10-1718 |
|                 ) | (RC) |
|                 ) | |
|         v.         ) | |
|                 ) | |
| DISTRICT OF COLUMBIA, *et. al.*,   ) | |
|                 ) | |
|     Defendants.    ) | |
|                 ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THEIR MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................I

**INTRODUCTION**.......................................................................................... 1

**STATEMENT OF FACTS** ............................................................................ 2

**PROCEDURAL HISTORY** ......................................................................... 5

**ARGUMENT** ................................................................................................ 6

    **I.**       **PLAINTIFFS SATISFY THE NUMEROSITY, COMMONALITY, TYPICALITY, AND ADEQUACY REQUIREMENTS OF RULE 23(A).**............. 6

    **II.**      *HYBRID*" **CLASS CERTIFICATION IS WARRANTED UNDER RULE 23(B)(2) AT THE "LIABILITY" PHASE AND UNDER RULE 23(B)(3) AT THE "REMEDIAL" PHASE BECAUSE PLAINTIFFS' CLASS ACTION SEEKS INJUNCTIVE RELIEF AND INDIVIDUAL REMEDIAL DAMAGES AFTER A FINDING OF LIABILITY FOR CFSA'S DISCRIMINATORY REDUCTION-IN-FORCE.** ................................................................................................ 14

    **III.**    **A RULE 23(B)(3) CLASS IS APPROPRIATE AT THE "REMEDIAL" PHASE BECAUSE, PURSUANT TO** *TAYLOR* **AND** *TEAMSTER*, **PLAINTIFFS' CLASS ACTION SEEKS INDIVIDUAL RELIEF AFTER A FINDING THAT DEFENDANT'S RIF UNLAWFULLY DISCRIMINATED AGAINST AFRICAN-AMERICANS AND PERSONS OVER THE AGE OF 40.** ...................................... 20

    **IV.**    **IN THE ALTERNATIVE, A RULE 23(B)(3) CLASS IS APPROPRIATE BECAUSE A COMMON QUESTION PREDOMINATES OVER ANY QUESTIONS AFFECTING ONLY INDIVIDUAL MEMBERS AND CLASS RESOLUTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY.** ............ 22

**CONCLUSION** ............................................................................................ 25

## **TABLE OF AUTHORITIES**
### **Cases**

*Aliotta v. Blair*, 614 F.3d 556 (D.C. Cir.  2010) .................................................... 16, 17

*\*Aliotta v. Gruenberg,* 237 F.R.D. 4 (D.D.C. 2006) .................................... 8, 14, 23, 24

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 18, 23

*Anderson v. Pa. Dep't of Pub. Welfare*, 1 F. Supp. 2d 456 (E.D. Pa. 1998).................................. 7

*Artis v. Yellen*, 307 F.R.D. 13 (D.D.C. 2014) ...................................................... 20, 21

*Brewer v. Holder*, 20 F. Supp. 3d 4 (D.D.C. 2013) ............................................... 16, 17

*Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003)..................................................... 8

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................ 26

*Coleman v. Pension Ben. Guar. Corp.*, 196 F.R.D. 193 (D.D.C. 2000)................................ 19, 22

*Davis v. District of Columbia,* No. 10-1718 (D.D.C. filed Sept. 6, 2010)...................................... 5

*DL v. District of Columbia*, 302 F.R.D. 1 (D.D.C. 2013)........................................... 19, 24

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977)...................................... 11, 12

*Dudley v. District of Columbia*, No. 10-1718 (D.D.C. filed Oct. 8, 2010)...................................... 5

*Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3 (D.D.C. 2010) ........................................ 7

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)........................................ 11, 26

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) ..................................................... 22

*In re Am. Med. Sys. Inc.*, 75 F. 3d. 1069 (6th Cir. 1996)........................................... 8

*In re Currency Conversion Fee Antitrust Litig.,* 264 F.R.D. 100 (S.D.N.Y. 2010) .................... 11

*In re District of Columbia*, 792 F.3d 96 (D.C. Cir. 2015) ........................................... 18

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014)................................................... 16, 18, 22

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C. 2001)........................... 8

*In re Pepco Emp't Litig.*, No. 86–0603, 1992 U.S. Dist. LEXIS 18648 (D.D.C. Dec. 18, 1992) 24

*In re Veneman,* 309 F.3d 789 (D.C. Cir. 2002) ................................................................ 19, 21

*\*International Bro. of Teamsters v. United States*, 431 U.S. 324 (1977)................. 16, 17, 18, 22

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999)...................................... 19

*Jones v. Rossides*, 256 F.R.D. 274 (D.D.C. 2009)........................................................ 20

*Keepseagle v. Veneman*, No. 99-3119, 2001 U.S. Dist. LEXIS 25220 (D.D.C. Dec. 12, 2001). 12,
    13

*Lightfoot v. District of Columbia*, 273 F.R.D. 314 (D.D.C. 2011) ........................................ 10, 12

*Lindsay v. Gov't Employees Ins. Co.*, 251 F.R.D. 51 (D.D.C. 2008)............................................. 7

*McNeil v. N.Y. Hous. Auth.*, 719 F. Supp. 233 (S.D.N.Y 1989) .................................................. 13

*Moore v. Napolitano*, 269 F.R.D. 21 (D.D.C. 2010) ................................................................ 7

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ................................................................................ 8

*Paxton Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982)......................................................... 11

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) ................................... 15, 19, 21

*Robidoux* v. *Celani,* 987 F.2d 931 (2d Cir. 1993)........................................................... 11

*Smith v. Ergo Sols., LLC*, 306 F.R.D. 57 (D.D.C. 2015) ............................................... 15

*\* Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33 (D.D.C. 2007) ................................ passim

*Thomas v. Christopher*, 169 F.R.D. 224 (D.D.C. 1996).............................................................. 9

*Twelve John Does v. Dist. of Columbia*, 117 F.3d 571 (D.C. Cir.1997) ..................................... 14

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987)................................................................... 11

*\* Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................................... passim

## **Statutes**

42 U.S.C. § 1981 (2012) ........................................................................................................ 5

42 U.S.C. § 2000e-2 *et seq. (2012)*................................................................................. 1, 6, 21

D.C. Code Ann. §§ 2.1401.01 *et seq.* (West 2015)............................................................. 1, 6, 21

## Rules

Fed. R. Civ. P. 23(a)(1).................................................................................................... 7

Fed. R. Civ. P. 23(a)(2).................................................................................................... 8

Fed. R. Civ. P. 23(a)(3)............................................................................................... 11, 12

Fed. R. Civ. P. 23(a)(4).................................................................................................. 14

Fed. R. Civ. P. 23(b)................................................................................................... 15, 18

Fed. R. Civ. P. 23(b)(2)........................................................................................... 1, 15, 18

Fed. R. Civ. P. 23(b)(3)....................................................................................... 1, 15, 23, 25

Fed. R. Civ. P. 23(c)(4).................................................................................................. 15

Fed. R. Civ. P. 23(c)(5)................................................................................................... 1

## Treatises

5 Moore's Federal Practice § 23.22[3][a] (3d ed. 2002) ................................................. 7

## Regulations

29 C.F.R. 1602.32 ........................................................................................................ 5

(*Pursuant to Local Civil Rules 7(a) cases denoted with an asterisk represent the authorities upon which plaintiffs chiefly rely.*)

## INTRODUCTION

Defendant D.C. Child and Family Services Agency ("CFSA")[1] conducted a Reduction-in-Force ("RIF") on May 6, 2010 that became effective June 11, 2010.  CFSA's RIF eliminated the positions of 115 employees.  This RIF was designed and implemented in a manner that disproportionately terminated African-Americans and CFSA employees who were over 40 years old[2], at the time, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, and the D.C. Human Rights Act, D.C. Code Ann. §§ 2.1401.01 *et seq*.

These consolidated cases are well suited for class treatment.  Each plaintiff and each putative class member suffered the *same* adverse employment action on the same day as part of the *same* plan and procedure authorized by CFSA Director Roque Gerald.

Because the issues are plain enough from the pleadings and Phase I discovery to determine whether the interests of the absent parties are fairly encompassed within the named plaintiffs' claims, Plaintiffs request "hybrid" class certification pursuant to Fed. R. Civ. P. 23(b)(2) for injunctive relief in the form of reinstatement, and Rule 23(b)(3) for back-pay and damages.  Plaintiffs also request that the hybrid class be comprised of two subclasses pursuant to Fed. R. Civ. P. 23(c)(5):    (1) all non-supervisory African-American CFSA employees who were separated

---

[1] The CFSA is part of the D.C. government, and has the duty to protect children who are at risk of abuse and neglect. CFSA's website states that the Agency has four primary goals: (1) taking reports of suspected child abuse and conducting investigations; (2) assisting families to address difficulties that may endanger children; (3) removing at-risk children to safe settings; and (4) working to ensure that children go to permanent homes. *See* Child and Family Services Agency: About CFSA, http://cfsa.dc.gov/page/about-cfsa (last visited Nov. 6, 2015).  The Agency employed 832 staff members as of June 1, 2010.  Dkt. 10-3, Decl. of Stan Spaght, ¶5.

[2] The age discrimination claim is brought under the D.C. Human Rights Act, not under the Age Discrimination in Employment Act (ADEA).  The DCHRA, unlike the ADEA, is not limited to employees age 40 and over.  However, Plaintiffs use the 40-and-over cutoff to define the class.

effective June 11, 2010; and (2) all non-supervisory CFSA employees who were age 40 and over as of their separation effective June 11, 2010. [3]

## STATEMENT OF FACTS

At some point prior to May 6, 2010, the District of Columbia (hereinafter, "defendant"), with full knowledge of the race and age of each employee, selected 115 positions in its Child and Family Services Agency ("CFSA") to be eliminated in a Reduction in Force ("RIF"). (*Pl. Exh. #1, FAQs re. Agency Changes*). Generally, CFSA oversees "children, youth, and family safety and permanency." (*Pl. Exh. 2, Porchia-Usher Decl. ¶¶ 14−15.*)  Within the Child Protective Services Division − the Agency branch most affected by the RIF -- the hierarchy of positions was as follows: a Social Work Program Manager ("SWM") sat at the top of the division, followed by Supervisory Social Workers ("SSW"), followed by Social Workers Associates ("SWA"), and followed by Social Services Associates (SSA). (*Pl. Exh. # 2, CFSA Organizational Chart.*)  Neither SWAs nor SSAs held supervisory positions. (*Exhibit 2, Porchia-Usher Decl. Id.* at ¶ 8.)  Of the 115 employees who received RIF notices, 16 held SWA positions, 57 held SSA positions, 105 held non-managerial positions.  Of the fifty-seven SSA's, fifty-six (98%) of the employees were African-American, (*Pl. Exh. #4, Def.'s Resp. to RFA, Set 1, No. 13*), and fifty-five (96%) were forty-years-

---

[3] "[T]here is no requirement in this circuit that a trial court conduct an evidentiary hearing or make specific factual findings on the issue of class certification in every case." *Hartman v. Duffey*, 19 F.3d 1459, 1473 (D.C. Cir. 1994); *see also Alliotta v. Gruenberg*, 237 F.R.D. 4 (D.D.C. 2006) (age discrimination class certified prior to discovery).  But in the event this Court believes further factual findings are necessary to decide the issue of class certification, Plaintiffs respectfully submit that they be given the opportunity to conduct further class discovery to make a "specific presentation" of common questions of law of fact, and then re-file this motion for class certification. *See Wagner v. Taylor*, 836 F.2d 578, 589 (D.C. Cir. 1987) ("What the Court demands from those seeking certification of a class cutting across employment status or job categories is a "specific presentation" identifying the questions of law or fact common to the class representative and the members of the class proposed."); *Johnson v. District of Columbia*, 248 F.R.D. 46 (D.D.C. 2008).

old or older. (*Id. ¶ 26.*) In addition, of the thirteen SWA's employed, eleven were African-American and two identified as "other than black." (Id. *¶* 16.)

Employees being subjected to the RIF received a letter from CFSA Director Roque Gerald dated May 6, 2010 (*Pl. Exh. #5, the "Gerald Letter*".) The Gerald Letter did not provide any reason for the RIF but merely informed employees that they "would be separated from District government service effective 06/11/10." (*Id.*) The letter also noted that "[t]his action is in accordance with Chapter 24 of the District's Personnel Regulations and in no way reflects adversely on your performance of your official duties." *Id.* Defendant did not conduct a validity study to support the elimination of SWA or SSA selection procedure consistent with D.C. Code §§1-607.06 or 2-1401.

The very same day CFSA sent the Gerald Letter, the agency posted an external job listing for a new Family Support Worker ("FSW") position. (*Pl. Exh. #6.*) Unlike the SSA position, the new FSW required a bachelor's degree, even though the two positions involved identical responsibilities. Specifically, SSA responsibilities included: accompanying the SSW to home visits; documenting information in the case record; supervising visits with children; entering case record information into the FACES computer program; interviewing children and families and making recommendations; and conducting searches for hard-to-find families. (*Pl. Exh. 2, Porchia-Usher Decl., SSA Job Description Attachment.*) The external job listing CFSA posted for the FSW position described nearly identical responsibilities, including, among others, "perform[] casework group work and community organization work," "enter[] observational information into FACES as appropriate," and "assist[] Social Workers" in various tasks. (*Pl. Exh. #6.*)

CFSA supervisors themselves conceded the similarities between the SSA and FSW positions, specifically stating that the job positions are substantially the same.  In an e-mail between Jenna BeeBe to CFSA Program Administrator Jesse Winston and Theresa Cunningham, on May 26, 2010, Ms. Beebe stated that a CFSA supervisor believed that "the FSW would be used in the exact fashion SSA's were prior to the RIF" based on the roles and responsibilities of the FSW position as defined by CFSA management. (*Pl. Exh. #7.*)

The external job listing for the FSW position noted that there were 35 vacancies, that there was no closing date, and that the "First Screening Date" would be May 17, 2010.  (*Pl. Exh. #6.*) On June 7, 2010, Director Gerald sent an email to the Agency, stating that "[t]he first of our new Family Support Workers (FSWs) came on board today," and that all 17 of the new hires "are former CFSA employees we're rehiring after the reduction in force last month."  (*Pl. Exh. 8.*) Director Gerald also stated that:

> Since we want to hire 35 FSWs in all, we're about half way there. The plan is to have the majority on board within the next 30 days. Human Resources is prepared to make offers to an additional group shortly. *All those candidates are from outside CFSA.*

*Id.* (emphasis added).

None of the plaintiffs and none of the other members of the RIF class were discharged for cause or for poor performance.  All had performed the duties of their positions in at least a satisfactory manner prior to June 2010.  Plaintiffs and other former employees discharged by the Defendant were harmed not only by the loss of their salaries but also by their loss of health care coverage, reduced pension benefits and other monetary losses, and by emotional distress and worry, and the loss of prestige as a result of the Defendant's conduct in designing and implementing the 2010 Reduction in Force and Realignment.

## PROCEDURAL HISTORY

On September 16, 2010, Plaintiffs in *Davis*, *et al. v. District of Columbia, et al.*, Case No. 10-1718, filed their putative class action Complaint in this Court alleging violations of 42 U.S.C. § 1981, the District of Columbia Human Rights Act ("DCHRA"), and 29 C.F.R. 1602.32. *See* Dkt. 1. Plaintiffs in *Dudley, et al. v. District of Columbia*, Case No. 10-1718, filed their Complaint on October 8, 2010. Both cases alleged that defendant, CFSA, discriminated against plaintiffs—on the basis of age and race—in conducting a Reduction in Force ("RIF"). In response to a motion from the *Dudley* Plaintiffs, the two cases were consolidated.[4] Plaintiffs filed their initial consolidated Motion for Class Certification along with a memorandum in support of the motion on January 14, 2011. *See* Dkt. 12. The Court denied Plaintiffs' Motion for Class Certification as moot, without prejudice, because Plaintiffs filed an amended complaint on May 9, 2011. *See* Minute Order of Sept. 23, 2011. The Court reasoned that "[t]he motion relie[d] on a superseded version of the complaint, as well as defendants' motion to dismiss the original complaint, which was denied as moot when leave to amend the complaint was granted." *Id.*

Plaintiffs' filed their Second Amended Complaint on March 22, 2013, incorporating class allegations in the complaint. *See* Dkt. 58. On April 11, 2013, Defendant's responded by filing a Motion for a More Definitive Statement of Plaintiff's Class Allegations to compel Plaintiffs to compute and disclose their individual damages. *See* Dkt. 60. Plaintiffs timely opposed and moved for leave to file a Third Amended Complaint. *See* Dkt. 63, 64. On May 31, 2013, the Court denied Defendant's Motion for More Definite Statement and granted Plaintiff's Motion for Leave to File Third Amended Complaint. *See* Minute Order of May 31, 2013. Plaintiffs' filed their Third Amended Complaint on May 31, 2013. *See* Dkt. 66. Defendant timely answered and filed

---

[4] The Dudley case was administratively closed on March 24, 2014.

a Rule 60(b) Motion for Partial Reconsideration of the Court's May 31, 2013 Minute Order.  *See* Dkt 68.  The Court denied Defendant's Motion for Reconsideration.  *See* July 5, 2013 Minute Order.  Plaintiffs' filed a renewed Motion for Class Certification on February 14, 2014. *See* Dkt. 81.  The Court denied without prejudice Plaintiffs' Motion for Class Certification as premature.  *See* Minute Order of Feb. 21, 2014.

Following discovery, and pursuant to the parties' Sept. 8, 2015 Status Conference, Plaintiffs now bring this renewed Motion for Class Certification because these consolidated cases are well-suited for class treatment. Each plaintiff and each putative class member suffered the *same* adverse employment action on the same day as part of the same plan and procedure authorized by CFSA Director Roque Gerald.

**ARGUMENT**

Plaintiffs bring this class action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, and the D.C. Human Rights Act, D.C. Code Ann. §§ 2.1401.01 *et seq.* on behalf of themselves and all similarly situated plaintiffs.  The final class certification consists of all CFSA employees, including retired employees, who were employed by the CFSA and who are over the age of forty (40), or African-American, or both, who have been discriminatorily fired during the RIF of May 10, 2010 on the basis of their race/color and/or age.

I. **PLAINTIFFS SATISFY THE NUMEROSITY, COMMONALITY, TYPICALITY, AND ADEQUACY REQUIREMENTS OF RULE 23(A).**

A. **Plaintiffs Have Satisfied the Numerosity Requirement Because it is Impracticable for a Putative Class of 115 Plaintiffs to be Joined.**

The first prerequisite for class certification is numerosity.  For numerosity to be satisfied

the class must be so numerous that "joinder of all members is impracticable [.]" Fed. R. Civ. P. 23(a)(1); *see also Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 8 (D.D.C. 2010) (citing *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007)).   "Typically, a class in excess of 40 members is sufficiently numerous to satisfy this requirement."  *Lindsay v. Gov't Employees Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008) (citing 5 Moore's Federal Practice § 23.22[3][a] at 23-63 (3d ed. 2002)).  However, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement[.]"  *Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.C. Cir. 2013).

In *Moore v. Napolitano*, the court found that "plaintiffs' proposed class of 120 geographically dispersed members" to be "sufficiently numerous to satisfy Rule 23(a)(1)." *Moore v. Napolitano,* 926 F. Supp. 2d at 28 (citing *Moore v. Napolitano*, 269 F.R.D. 21, 28 (D.D.C. 2010)).   The court also found that a class as small as 36 members can satisfy Rule 23(a)'s numerosity prong.  *Id.*  Furthermore, this Court has subsequently agreed that a class of 27 members can still satisfy the numerosity prong where joinder is impractical because the class members are geographically dispersed.  *Id.* (citing *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998)).  Here, CFSA's records show that there were 115 employees terminated under the RIF.  Spaght Decl. ¶5, Dkt. 10-3.  Amongst those 115 employees, 93% were African-American and 74.8% were over the age of forty.  *Id.* Similar to the putative class in *Moore,* joinder of 115 possible plaintiffs is impracticable.  Furthermore, each subclass, race and age, has at least 40 members, which is sufficient to satisfy numerosity.

## B. Plaintiffs Satisfy the Commonality Requirement Because the Question of Whether CFSA's RIF Disproportionately Terminated African-Americans and Over-40 Employees is a Common Contention Central to all Class Members.

The second prerequisite for class certification is that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if the

named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Aliotta v. Gruenberg,* 237 F.R.D. 4, 10 (D.D.C. 2006). Courts have made it resoundingly clear that only one common question of law or fact is actually necessary to satisfy Rule 23(a)(2)'s commonality requirement. *See Wal-Mart Stores, Inc. v. Dukes (Wal-Mart)*, 131 S. Ct. 2541, 2556 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a singly common question will do.") (internal citations and quotations omitted); *In re Am. Med. Sys. Inc.*, 75 F. 3d. 1069, 1080 (6th Cir. 1996) ("...commonality is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."); *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003) ("Significantly, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.").

In resolving the issue of commonality, courts have focused on the existence of a common contention raised by all class members, regardless of any varying characteristics among class members. Indeed, in *Wal-Mart*, the Supreme Court held that commonality is met when class members' claims depend on a common contention, the resolution of which through a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Here, there are both common questions of fact and law that the court must resolve. First, whether the manner in which the RIF was conducted fell so outside of the norm that it indicates a pattern and practice of discrimination,

and second whether the RIF have a disparate impact on the protected classes of African-Americans and workers over forty.

When examining whether an employment practice was carried out in a discriminatory fashion, this Court has looked to whether the employer's decisions were based on subjective or objective criteria. *See Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996) *aff'd in part, rev'd in part sub nom. Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998). In *Thomas*, the plaintiffs presented evidence that the employer's decision to promote an employee depended on highly subjective performance evaluations that lacked "objective standards to ensure that impermissible considerations, such as race, did not play a role in performance appraisals." *Id.* As a result of these subjective employer decisions, coupled with statistically significant race disparities, the Court found that the class of plaintiffs presented common questions of law and fact. *Id.*

Here, the May 6, 2010 letter received by each of the putative class members provided no reason as to why the RIF was being conducted and the criteria behind the manner in which the RIF was being carried out. This requires the court to consider evidence as to whether the employers used subjective criteria in determining how to carry out the RIF, without ensuring objective standards were in place to prevent disparities among the class members.

In opposition to a prior motion for class certification, Defendant argued that the commonality requirement was not met supposedly because the abolishment of the SSA position and the establishment of a Family Support Worker ("FSW") position were separate and unrelated actions. *See* Def. Opp. to Pls.' Motion for Class Cert. at 6, Feb. 14, 2011, Dkt. 15. That argument misses the point. The two actions are one and the same, and the fact that they were announced simultaneously, and were most likely planned in tandem, shows, at a bare minimum, that they are related. Defendant may well disagree, but the point is that resolving the truth of that question is,

in fact, common to all members of the class.  In other words, employees who were terminated

under the RIF will use the same evidence and method of proof as the other putative class members

to demonstrate that the RIF was designed and implemented in a discriminatory manner and, as

such, "will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart*, 131 S. Ct. at 2551.

This court has noted that "the test for commonality is met where there is at least one issue,

the resolution of which will affect all or a significant number of the putative class members."

*Lightfoot v. District of Columbia*, 273 F.R.D. 314, 324 (D.D.C. 2011) (internal citations and

quotations omitted).  Therefore, the differences among the positions that were held by the putative

class members in no way preclude the certification of the common, class-wide question.  All of

the members of the class have suffered the same injury, being terminated from the CFSA due to a

RIF which was not carried out in a manner to properly ensure that Title VII was not violated.


### C. The Proposed Class Meets the Typicality Requirement of Rule 23(a)(3) Because Each Class Member's Claim Arises from the Same Course of Events that Led to the Claims of the Representative Parties.

The third prerequisite is that plaintiffs must show that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The analysis of commonality applies equally to typicality as the commonality and typicality

requirements under Rule 23(a) tend to merge.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S.

147, 158 n. 13 (1982); *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987).  The court must

consider "whether [the class representatives] suffered injury from a specific discriminatory [firing]

practice of the employer in the same manner that the members of the proposed class did, and

whether [the class representatives] and the class members were injured in the same fashion by a

general policy of employment discrimination."  *Falcon*, 457 U.S. at 158 n. 13; *Wagner*, 836 F.2d

10

at 591.  *See also Paxton Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) ("Typicality is not defeated because of the various promotional opportunities at issue, or the differing qualifications of plaintiffs and class members.").  Thus, when there are similar grievances and "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *See Robidoux* v. *Celani,* 987 F.2d 931, 93637 (2d Cir. 1993); *In re Currency Conversion Fee Antitrust Litig.,* 264 F.R.D. 100, 111 (S.D.N.Y. 2010); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 832 (8th Cir. 1977).  In *Donaldson*, the court held that a district court abused its discretion in denying class certification status to a class where the plaintiff argued that pervasive discriminatory conduct by its employer resulted in plaintiff and others being victims of two forms of discrimination: race and sex bias in employment.  *Donaldson*, 554 F.2d at 830−31.  The court noted that Rule 23 should be liberally construed to "effectuate the remedial policy of Title VII since the conduct therein proscribed is discrimination against a class characteristic."  *Id.* at 831.  Thus, "[w]hen the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."  *Id.*

Typicality exists with respect to the factual events.  Typicality is usually met where "each class member's claim arises from the same course of events that led to the claims of the representative parties."  *Keepseagle v. Veneman*, No. 99-3119, 2001 U.S. Dist. LEXIS 25220, at *22 (D.D.C. Dec. 12, 2001).  Like commonality, it is not defeated simply because factual variations exist amongst the class members.  *See generally Lightfoot,* 273 F.R.D. 314.  Here, Plaintiffs' claims are typical of the claims of the class because CFSA's common course of unlawful conduct has caused the Plaintiffs and Class Members to sustain the same or similar injuries and damages caused by the CFSA.  Each plaintiff fired during CFSA's May 2010 RIF is African-American

and/or over the age of 40, and each plaintiff suffered the same injury - namely, termination - when the RIF became effective on June 11, 2010. This termination arose out of the same CFSA policy that applied to all CFSA employees. Thus, for both of the proposed subclasses, each class member's claim would arise from the same course of events that led to the claims of the representative parties, and each class member would make similar legal arguments to prove the defendant's liability. Rule 23(a)(3)'s typicality requirement is readily met based on the factual similarities of the plaintiffs.

Both subclasses also arise under similar legal theories, involving the same methods of proof. The typicality requirement is satisfied so long as "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Keepseagle*, 2001 U.S. Dist. LEXIS 25220, at *22. *See also McNeil v. N.Y. Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y 1989) (holding that claims need not be identical). Here, Plaintiffs legal theories are similar. All Plaintiffs allege disparate impact theories; specifically, that the pattern and practice of the CFSA have disproportionately impacted the African-American and over-40 plaintiffs in this case. The CFSA's conduct squarely falls within the typicality requirement based on the theories of liability.

Defendant imposed an education requirement as a selection criterion for filling the FSW jobs in June 2010 that is not job related or consistent with business necessity. Defendant did not conduct a validity study to support that selection procedure consistent with D.C. Code §§1-607.06 or 2-1401. Defendant could have used job experience in the SSA, SWA and/or Program Monitor job titles or other comparable experience as a selection criteria for the 38 FSW positions filled in the summer of 2010. Such an alternative would have had less disparate impact than the education requirement defendant used. Because Plaintiffs have made a convincing showing of common

discriminatory treatment that extends to affect subclasses of individuals of similar race and age

based on both the facts and the law, they have made a sufficient demonstration that the claims of

the class representatives are largely typical of those of the class.

### D. Plaintiffs and Undersigned Counsel Will Fairly and Adequately Represent the Class Because There are No Conflicting Interests Between the Named and Unnamed Class Members and Plaintiffs are Represented by Competent Counsel Who Will Vigorously Represent Their Interests.

Finally, Plaintiffs and undersigned counsel have satisfied Rule 23(a)(4)'s requirement that

they "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  According

to the D.C. Circuit, "[t]wo criteria for determining the adequacy of representation are generally

recognized: 1) the named representative must not have antagonistic or conflicting interest with the

unnamed members of the class, and 2) the representative must appear able to vigorously prosecute

the interest of the class through whether the plaintiffs can maintain a class action pursuant to one

of Rule 23(b)'s subdivisions qualified counsel." *Twelve John Does v. Dist. of Columbia*, 117 F.3d

571, 575 (D.C. Cir.1997).

Here, the proposed subclasses are only comprised of non-supervisory employees,

eliminating the potential for conflict between supervisory and non-supervisory employees.  There

is no other discernible conflict of interest between the Plaintiffs and class members who have all

incurred the same injury, and each plaintiff, like each class member, will be seeking either

reinstatement or an award of backpay.  Though the Defendants have attempted to dispute the

adequacy of representation by arguing that non-SSA class members would have no interest in

prosecuting the former SSAs' claims, they cite no authority to support such a claim.  *See* Def. Opp.

to Pls.' Motion for Class Cert. at 9, Feb. 14, 2011, Dkt. 15.  This Court's decisions in *Taylor* and

*Aliotta* have established that adequacy is not destroyed merely when putative classes comprise members of different types of jobs and occupations.

Undersigned counsel undertook representation at the request of the Court after prior counsel was unable to continue representation.  Undersigned counsel is well qualified to represent the class members' interests.

## II.    *HYBRID*" CLASS CERTIFICATION IS WARRANTED UNDER RULE 23(b)(2) AT THE "LIABILITY" PHASE AND UNDER RULE 23(b)(3) AT THE "REMEDIAL" PHASE BECAUSE PLAINTIFFS' CLASS ACTION SEEKS INJUNCTIVE RELIEF, AND INDIVIDUAL REMEDIAL DAMAGES AFTER A FINDING OF LIABILITY FOR CFSA'S DISCRIMINATORY REDUCTION-IN-FORCE.

Having met the requirements of Rule 23(a), plaintiffs can also show "the class is maintainable pursuant to []23(b)'s [three] subdivisions." *Smith v. Ergo Sols., LLC*, 306 F.R.D. 57, 66 (D.D.C. 2015) (citing *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006)); Fed. R. Civ. P. 23(b).

Rule 23(b)(2) provides that class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Generally, Rule 23(b)(3) provides that class certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Where a Title VII class action seeks compensatory damages in addition to injunctive relief, "*hybrid*" Rule 23(b) class certification is permissible under Rule 23(c)(4).  *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 47 (D.D.C. 2007); Fed. R. Civ. P. 23(c)(4) ("[A]n action may be brought or maintained as a class action with respect to particular issues.").  In such case,

the Court may exercise its discretion pursuant to Rule 23(c)(4) to certify a 23(b)(2) issue class "for the purposes of determining discrimination and granting injunctive relief," and a 23(b)(3) issue class as to the claims for individualized monetary relief. *See In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014) (citing *Taylor,* 241 F.R.D. 33 (D.D.C. 2007)) (adopting this Court's approach to separating the common and individualized issues in *Taylor* as "expressly authorized by Rule 23(c)(4)" and an appropriate exercise of the Court's "discretion in the management of the litigation before it").

Further, in the pattern-or-practice lawsuit context, the issues may be bifurcated into two phases — a "liability" phase and a "remedial" phase — pursuant to *International Bro. of Teamsters v. United States (Teamsters)*, 431 U.S. 324 (1977). *See In re Johnson*, 760 F.3d at 74−75 (citing *Teamsters,* 431 U.S. at 359–60) ("The Supreme Court has instructed that in pattern-or-practice class actions, the plaintiffs can first 'demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer,' after which members of the class will have the benefit of the presumption at his or her individualized hearing (now known as a *Teamsters* hearing) that 'individual [employment] decisions were made in pursuit of the discriminatory policy.'"); *see also Brewer v. Holder*, 20 F. Supp. 3d 4, 13−14 (D.D.C. 2013) (explaining the "*Teamsters* framework" and referring to the D.C. Circuits "succinct" description of the framework in *Aliotta v. Blair*, 614 F.3d 556 (D.C. Cir. 2010)).[5]

---

[5] The Court explained:

> In the initial, or "liability," phase of a pattern or practice lawsuit, the analysis focuses on whether the unlawful discrimination has been the employer's regular or systemwide pattern or practice. In order to make out a prima facie case, the plaintiffs must . . . establish by a preponderance of the evidence that discrimination was the company's standard operating procedure—the regular rather than the unusual practice. In this phase, the plaintiffs need not show each individual member of the class was a victim of the employer's discriminatory policy, since proof of the pattern or practice supports an inference that any

**A. This Court has Already Determined that Damages will be Dealt With at a Later _Teamsters_ Hearings Stage, thus, Exercising the Court's Rule 23(c)(4) Judicial Management Discretion to Treat the Class as a "_Hybrid_" Class as to Particularized Issues at the "Remedial" and "Liability" Phases of Litigation.**

The Court should grant Plaintiffs' Motion to have the particularized issues of injunctive relief and monetary relief bifurcated into two phases — injunctive relief at a "liability" phase and a monetary relief "remedial" phase — pursuant to _Teamsters_, 431 U.S. 324 (1977), because the Court has already acknowledged its intent to exercise its judicial management discretion in this litigation by bifurcating the issues at an initial "liability" stage and later remedial "damages" stage. _See_ Minute Order of July 5, 2013 ("The court understands that the plaintiffs' damages, including compensatory damages, will vary, but damages will be dealt with in _Teamsters_ hearings at a later stage of the case."); Minute Order of May 31, 2013 ("It goes without saying that damages will need to be calculated individually if a class is certified and the plaintiffs prevail on the question of liability").

---

particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.

Once a prima facie case is established, the burden shifts to the employer to rebut the inference of discrimination by showing the employees' proof is either inaccurate or insignificant. . . . If an employer fails to rebut the inference that arises from the plaintiffs' prima facie case, the district court may conclude that discrimination occurred. [A] court's finding of a pattern or practice justifies an award of prospective relief, such as an injunction or court monitoring. . . .If plaintiffs seek individual relief for the victims of discriminatory practice, the litigation proceeds to the "remedial" stage where each class member must show individual harm. During this stage, a district court must usually conduct additional proceedings . . . to determine the scope of the individual relief.

_Brewer_, 20 F. Supp. 3d at 13−14 (citing _Aliotta v. Blair_, 614 F.3d 556 (D.C. Cir. 2010)) (internal citations and quotations omitted).

**B. A Rule 23(b)(2) Class is Appropriate at the "Liability" Phase Because, pursuant to *In re Johnson* and *Taylor*, Plaintiffs' Class Action Seeks Injunctive Relief After a Finding that Defendant's RIF Unlawfully Discriminated Against African-Americans and Persons Over the Age of 40.**

The Court may exercise its discretion pursuant to Rule 23(c)(4) to certify a 23(b)(2) issue class "for the purposes of determining discrimination and granting injunctive relief." *See In re Johnson*, 760 F.3d at 75 (citing *Taylor,* 241 F.R.D. 33 (D.D.C. 2007)) (recognizing this Court's approach to separating the common and individualized issues in *Taylor* is "expressly authorized by Rule 23(c)(4)" and an appropriate exercise of the Court's "discretion in the management of the litigation before it"). The Court should grant Plaintiffs' Motion for Class Certification of a Rule 23(b)(2) class at the liability phase, pursuant to *Teamsters*, 431 U.S. 324 (1977), and this Court's ruling in *Taylor*, 241 F.R.D. 33 (D.D.C. 2007), for three reasons. First, the two protected classes—race and age—for which Plaintiffs seek class certification fall within the umbrella of "civil-rights actions." Second, CFSA's "practice" of terminating African-American CFSA employees and older CFSA employees during a RIF and, subsequently, excluding those employees from regaining employment in open positions was generally applicable to the entire class. Third, there is no dispute that Plaintiffs are seeking final injunctive relief.

Rule 23(b)(2) was intended for civil rights cases. *See In re District of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011)) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) ("[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what 23(b)(2) is meant to capture.")); *see also* Fed. R. Civ. P. 23(b) advisory committee's note to 1966 amendment ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class"). A Rule 23(b)(2) class is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  In other words, there are two requirements of Rule 23(b)(2) classes:  (1) the opposing party's conduct must be "generally applicable" to the class and (2) final injunctive relief must be requested for the class. *Taylor*, 241 F.R.D. at 47.

"An inquiry into whether the defendant acted on grounds generally applicable to the 23(b)(2) class is often considered to be encompassed by the commonality requirement of Rule 23(a)." *Taylor*, 241 F.R.D. at 47 n.17.  Here, the court should find "no difficulty concluding that, as to liability, [CFSA] is alleged to have acted . . . on grounds generally applicable to all class members" because like in *Taylor* CFSA adopted a "practice" which tended to cause African-American CFSA employees and older CFSA employees to lose their positions during a RIF and subsequently excluded them from regaining employment in open positions they were qualified to fill. *Taylor*, 241 F.R.D. at 47.

Moreover, it is undisputed Plaintiffs seek injunctive relief.[6]  Plaintiffs request the Court prohibit the Defendant from "engaging in discharges from employment of the kind which harm older and African-American employees at a significantly higher rate than younger employees and non African-American employees, and prohibiting the Defendant from using a Bachelor's Degree as a requirement for employment as a SSA or FSW or other similar position." *See* Plaintiffs' Third Am. Compl. at 21.  All Plaintiffs wish to be "made whole" as employees of CFSA. *Id.*  "Made whole" means being restored to the positions from which they were removed during the RIF or the

---

[6] Injunctive relief is typical of the appropriate relief for employment discrimination class actions. *See DL v. District of Columbia*, 302 F.R.D. 1, 16 (D.D.C. 2013) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 1426, 2557) ("Stated in Wal–Mart terms, certification of a[](b)(2) class in this case is appropriate because the District's conduct is 'such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").  In this way, injunctive relief benefits "the class as a whole . . . regardless whether some of those affected might have withdrawn from the suit if given the option." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) (citing *In re Veneman*, 309 F.3d 789, 792) (D.C. Cir. 2002)).

equivalent thereof. *See Coleman v. Pension Ben. Guar. Corp.*, 196 F.R.D. 193, 199 (D.D.C. 2000) (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999) ("[P]laintiffs' claim for benefits is equitable in nature because it seeks restitution, rather than damages, thus rendering it appropriate for certification under Rule 23(b)(2).") (distinguishing "monetary damages" from "equitable monetary relief such as backpay" under Rule 23(b)(2))) (emphasis in the original); *see also Jones v. Rossides*, 256 F.R.D. 274, 277 (D.D.C. 2009) (distinguishing *Coleman*, which allowed restitution as equitable relief under a 23(b)(2) class, from facts where Plaintiffs were only able to seek money damages, not restitution).

To be sure, one court in this Circuit has found that "[t]he *Wal–Mart* Court was unanimous in holding that class actions seeking backpay under Title VII do not belong under Rule 23(b)(2)." *Artis v. Yellen*, 307 F.R.D. 13, 27 (D.D.C. 2014). However, there are two reasons that language from *Artis* does not and should not control certification of the present class. To begin with, in *Artis* the Court made it clear that "[t]he Supreme Court [in *Wal-Mart*] reserved judgment on whether Rule 23(b)(2) may be available where monetary relief is 'incidental to the injunctive or declaratory relief,' [and] made clear that claims for backpay under Title VII are not incidental because the employer 'is entitled to individualized determinations of each employee's eligibility for backpay,' including the ability to 'show that it took an adverse employment action against an employee for any reason other than discrimination.'" *Id.*

Moreover, on its facts *Artis* is entirely distinguishable from the present case. In *Artis*, sixteen named African-American and Native American plaintiffs who were secretarial and clerical employees of the Federal Reserve Board brought an action for racial discrimination. *Id.* at 15. After prolonged discovery, plaintiffs could not produce evidence to show that their claims of individual discrimination stemmed from a common source. *Id.* at 18. Following the class

19

certification discovery period, the Court found that the plaintiffs did not meet the requirements of

Rule 23(a) because the plaintiffs' class definition improperly made membership in the class

contingent on an individualized merits determination, and plaintiffs did not establish commonality

or typicality.  *Id.* at 24.  Although Judge Emmett G. Sullivan's  analysis in *Artis*, could have

stopped at the 23(a) determination, he went on to summarily conclude in two paragraphs that the

demand for backpay meant that plaintiffs could not meet requirements of Rule 23(b).  *Id.* at 27−28.

Here, although Plaintiffs ultimately request backpay and compensatory damages in order

to be made whole, recovery of damages is not "at the heart of the complaint,"  *Richards v. Delta*

*Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) (citing *In re Veneman,* 309 F.3d 789, 792 (D.C.

Cir. 2002)).  Rather, the heart of Plaintiffs' complaint at the liability phase is a declaration that the

RIF initiated by CFSA is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e-2 *et seq.*, and the D.C. Human Rights Act, D.C. Code Ann. §§ 2.1401.01 *et seq.*

**III.**   **A RULE 23(b)(3) CLASS IS APPROPRIATE AT THE "REMEDIAL" PHASE BECAUSE, PURSUANT TO *TAYLOR* AND *TEAMSTER*, PLAINTIFFS' CLASS ACTION SEEKS INDIVIDUAL RELIEF AFTER A FINDING THAT DEFENDANT'S RIF UNLAWFULLY DISCRIMINATED AGAINST AFRICAN-AMERICANS AND PERSONS OVER THE AGE OF 40.**

This Court has already exercised its judicial management discretion in this litigation by

bifurcating the issues at an initial "liability" stage and later remedial "damages" stage.  *See* Minute

Order of July 5, 2013 ("The court understands that the plaintiffs' damages, including compensatory

damages, will vary, but damages will be dealt with in *Teamsters* hearings at a later stage of the

case."); *see also* Minute Order of May 31, 2013 ("It goes without saying that damages will need

to be calculated individually if a class is certified and the plaintiffs prevail on the question of

liability").  Although Defendant may claim that the decision to remove the Plaintiffs was

individualized, based on their position at the time of the RIF, this is irrelevant at this stage in the

proceedings.   Where "the Court anticipate[s] individualized *Teamsters* hearings [the Court] in effect complie[s] in advance with th[e] aspect of the *Wal–Mart* decision that holds [that a defendant must have the opportunity in a *Teamsters* hearing to rebut [the] presumption of discrimination on an individualized basis." *See In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014).  Any individualized defenses an employer asserts are only relevant at the second stage of a Title VII case for "demonstrating that the . . . proof is either inaccurate or insignificant." *See International Bro. of Teamsters v. United States (Teamsters)*, 431 U.S. 324, 360 (1977); *see also Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) (the employer can rebut a disparate impact claim by proving that the challenged practice is justified by a business necessity).[7]

Once Plaintiffs' establish liability, the Court may order injunctive relief and then hold "*Teamsters* hearings" to make individualized determinations as to whether a particular employee suffered an adverse employment action as a result of the defendant's discriminatory RIF, and whether she is entitled to individualized equitable relief, such as backpay and front pay, or compensatory damages.  *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 47 (D.D.C. 2007) (citing *Teamsters*, 431 U.S. at 336); *see also Coleman v. Pension Ben. Guar. Corp.*, 196 F.R.D. 193, 200 (D.D.C. 2000) (illustrating a case that certified a Rule 23(b)(2) class and contemplated bifurcation "find[ing] [that] the mere possibility that this case will require individualized benefit determinations insufficient to bar class certification.").

---

[7] In the alternative, the record demonstrates that Defendant's own representations support the certification of a 23(b)(2) class and defeat any arguments made by the Defendant's that individualized defenses exist.  In fact, defendants stated that they did not fire plaintiffs based on individual determinations, but based on being a part of specific classes and groups. *See* Pls. Exh. FAQs re: Agency Changes, DAVIS003985 (The FAQ document states that the agency was not "singling out" individuals, but positions and groups of people.)  This class of plaintiffs should not be looked at individually, but should be deemed a group or class of people whose grievances can be commonly linked.

**IV.     IN THE ALTERNATIVE, A RULE 23(b)(3) CLASS IS APPROPRIATE BECAUSE A COMMON QUESTION PREDOMINATES OVER ANY QUESTIONS AFFECTING ONLY INDIVIDUAL MEMBERS AND CLASS RESOLUTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE CONTROVERSY.**

In the alternative, the Court may grant plaintiffs Motion for Class Certification of a Rule 23(b)(3) class.  Maintenance of a class under Rule 23(b)(3) imposes two requirements: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs meet both of these requirements and class certification will achieve the interests of judicial economy in this case.

First, the common question of law and fact— whether the May 6, 2010 RIF was designed and implemented in a manner that disproportionately terminated African-American and over-40 CFSA employees—creates two sufficiently cohesive subclasses.  In each subclass, the discriminatory nature of the RIF predominates over any other questions affecting only individual members.  Second, a class action is superior to other available means for the fair adjudication of this controversy.  Last, class certification will insure that the injury suffered by each member of the class—which is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible—are litigated in an economical fashion under Rule 23.

**A.  The Question Of Whether the May 6, 2010 RIF was Designed And Implemented in a Manner that Disproportionately Terminated African-American and Over-40 CFSA Employees Creates Two Sufficiently Cohesive Subclasses in Which the Discriminatory Nature of the RIF Predominates Over Any Other Questions Affecting Only Individual Members.**

This Court has noted that "[t]he common question requirement of Rule 23(a) and the predominance requirement of Rule 23(b) overlap." *Aliotta v. Gruenberg,* 237 F.R.D. 4, 12 (D.D.C.

2006).  Past the commonality requirement of Rule 23(a), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule."  Subclasses are appropriate as long as every member of the subclasses wants the same relief, and each subclass satisfies the requirements for certifying a class that could stand alone in a separate class action if necessary.  *See DL v. District of Columbia*, 302 F.R.D. 1, 10 (D.D.C. 2013).

Although there is an obvious overlap between age and race in this case, Plaintiffs submit that two separate subclasses provide the most effective means of managing this case going forward.  That is because Plaintiffs have brought separate claims for race discrimination under Section 1981 and the DCHRA, and age discrimination under the DCHRA.  However, the plaintiffs of both subclasses all worked for the same agency, were terminated as part of the same RIF plan and procedure, and each seek the same relief, satisfying the commonality requirement.  The two proposed subclasses allow Plaintiffs to more efficiently address the legal issues that are particular to each type of claim.  This Court has previously allowed subclasses in employment discrimination cases.  *See generally In re Pepco Emp't Litig.*, No. 86–0603, 1992 U.S. Dist. LEXIS 18648 (D.D.C. Dec. 18, 1992) (Title VII race discrimination case certifying subclasses for rejected applicants, non-exempt non-supervisory employees, and exempt employees).

## B. A Class Action is Superior to Other Available Means for the Fair and Effective Adjudication of This Controversy.

Certifying the present class is superior to other available methods for fairly and efficiently adjudicating the controversy.  This Court has noted that "[c]lass actions are the superior method when they serve the purpose of efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent

adjudications." *Aliotta*, 237 F.R.D. at 13.  There are four factors the Court may consider in making the superiority determination.  Fed. R. Civ. P. 23(b)(3).  Here, all of these pertinent considerations for superiority are met.

First, the Court may consider "the class members' interests in individually controlling the prosecution or defense of separate actions" weigh decisively in favor of class treatment.  *Id.*  Here, none of the class members present monetary claims that are so large or different from the other class members that individual prosecution would be preferable to participation in a class.  Indeed, the fact at least 47 putative class members have joined this case as party-plaintiffs demonstrates the superiority of class-wide prosecution of this case.

Second, the Court may consider "the extent and nature of any litigation concerning the controversy already begun by or against class members" also favors class certification.  *Id.*  Plaintiffs are not aware of any other civil rights lawsuit that has been filed in this Court against CFSA arising out of the May 2010 RIF other than the *Davis* and *Dudley* actions.  The consolidated cases sufficiently address the legal and factual issues relating to the RIF.  The cases have been pending before this Court since 2010 and have accumulated a discovery record sufficient to warrant class certification.

Third, the Court's consideration that "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," also favors class certification.  *Id.*  All putative class members were employed within the District of Columbia, and Plaintiffs believe that all or nearly all class members reside in the metropolitan D.C. region.  This Court thus provides an ideal forum for proceeding with a class action.

The fourth and final factor, "the likely difficulties in managing a class action," also favors Plaintiffs' 23(b)(3) class certification.  *Id.*  The size of the class in this case will be no greater than

24

115 class members, and this modest size reduces the likelihood of any difficulties as the class action proceeds.

### C. Judicial Economy is Achieved by Class Certification.

Last, the class action device is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).  Here, the injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible.  Individualized litigation increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for class certification, and certify a hybrid 23(b)(2) and (b)(3) class comprised of two subclasses: (1) all non- supervisory African-American CFSA employees who were separated effective June 11, 2010, and (2) all non-supervisory CFSA employees who were age 40 and over as of their separation on June 11, 2010.  In the alternative, Plaintiffs request the court certify a 23(b)(3) class.

Date: November 8, 2015

Respectfully submitted,

/s/ Aderson B. Francois
Aderson B. Francois
Civil Rights Clinic
Howard University School of Law
2900 Van Ness Street N.W.
Washington, DC 20008
Phone: (202) 806-8065
Facsimile: (202) 896-8436
Email: afrancois@law.howard.edu