UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RONDA L. DAVIS, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 10-1564 (RC) |
| | : | |
| v. | : | Re Document Nos.: 184, 185 |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL AND DENYING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

The District of Columbia, the defendant in this long-running employment discrimination case, asks the Court to dismiss certain plaintiffs for lack of prosecution because they have not responded to the District's interrogatories. Because dismissal is generally a last resort and the District has not yet asked for any alternative, milder measures, the Court denies this motion without prejudice. The District also asks the Court to compel further interrogatory responses from the remaining plaintiffs, a request the Court grants in part and denies in part.

### II. BACKGROUND[1]

#### A. Factual Background

The District of Columbia Child and Family Services Agency ("CFSA" or the "Agency") exists "to ensure the safety, permanence, and well-being of abused and neglected children and to

---

[1] The Court assumes familiarity with, and borrows factual background from, its three previous opinions and the D.C. Circuit's opinion. *See Davis v. District of Columbia*, 496 F. Supp. 3d 303 (D.D.C. 2020); *Davis v. District of Columbia*, 246 F. Supp. 3d 367 (D.D.C. 2017); *Davis v. District of Columbia*, 949 F. Supp. 2d 1 (D.D.C. 2013); *Davis v. District of Columbia*, 925 F.3d 1240 (D.C. Cir. 2019). These opinions outline in detail the facts underlying this case.

strengthen troubled families in the District." Def.'s Resp. to Pls.' Statement of Undisputed Material Facts ("Def.'s Resp. Material Facts") ¶ 1, ECF No. 171-1. CFSA experienced significant budgetary pressure in fiscal years 2010 and 2011. "In Fiscal Year 2010 (October 1, 2009–September 30, 2010), CFSA's local funds' budget was reduced by $25.3 million from the [previous year.]" *Id.* ¶ 8. The FY 2010 budget reduced the number of approved full-time employees and, as a result, CFSA implemented personnel reductions to its information technology unit and public information office. *Id.* ¶¶ 9–10. The D.C. Council further reduced the funds available to CFSA in FY 2011 by $12.1 million. *Id.* ¶ 11. To address the reduction in funding in FY 2011, CFSA used a reduction in force ("RIF") with an effective termination date of June 11, 2010. *Id.* ¶ 13. The RIF is the subject of Plaintiffs' lawsuit.

The RIF resulted in the elimination of 123 positions, which translated to the separation of 115 employees from the agency. *Id.* ¶¶ 14–15. The elimination of two types of positions in their entirety—the Social Services Assistant ("SSA") and the Social Worker Associate ("SWA")— accounted for the majority of the 115 employees terminated. *See id.* ¶¶ 13, 22. The District explains that the elimination of these positions resulted from the agency's conversion of "its workforce to the 'team model,' which grouped social workers with a set of skilled partners to serve client needs together." Def.'s Material Facts ¶ 12, ECF No. 169. According to the District, the SSA and SWA positions were "no longer needed under the new model." *Id.* ¶ 13. Though the exact percentages are disputed, Plaintiffs object to the elimination of these positions

---

Nevertheless, the Court highlights the factual and procedural background relevant to the pending motions, including by repeating some of the background found in previous opinions. Because the Court's and the D.C. Circuit's decisions have significantly narrowed the scope of this case, and because the pending motions pertain only to procedural and discovery issues, the Court will keep its review of the factual background brief.

because, according to their calculations, 98 percent of the eliminated SSAs and eleven of the thirteen eliminated SWAs were African-American. Def.'s Resp. Material Facts ¶¶ 23–24.

### B.  Procedural History

Plaintiffs filed their initial complaint on September 16, 2010. *See* Compl., ECF No. 1. The current operative complaint is Plaintiffs' Third Amended Complaint, filed on May 31, 2013. *See* 3d Am. Compl., ECF No. 66. The Third Amended Complaint brings claims of age discrimination pursuant to the District of Columbia Human Rights Act ("DCHRA") and race discrimination pursuant to Title VII and the DCHRA. *See id.* ¶¶ 78–105. Plaintiffs' racial discrimination claim based on a theory of disparate impact caused by the manner in which the RIF was conducted is the sole remaining claim.

In 2017, this Court granted summary judgment in favor of the District on this claim because it determined that Plaintiffs had "failed to identify a specific employment practice" susceptible to challenge under Title VII. *Davis*, 246 F. Supp. 3d at 394. The Court found that "simply pointing to a RIF generally is not sufficient" to support a disparate impact claim. *Id.* at 395 (citing *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1269 n.5 (8th Cir. 1987)). The Court noted that Plaintiffs' expert "analyzed the *agency-wide* termination rates for African Americans" and that she "analyzed the RIF as if every employee stood an equal chance of termination." *Id.* at 396 (emphasis in original). Because Plaintiffs did not more specifically identify the employment practice for the observed statistical disparities, the Court granted summary judgment for the District. *Id.* at 397.

The D.C. Circuit reversed this Court's decision on this issue. *Davis*, 925 F.3d at 1254. The court explained that "[d]isparate impact analysis is 'no less applicable to subjective employment criteria than to objective or standardized tests.'" *Id.* at 1249 (quoting *Watson v.*

*Fort Worth Bank and Tr.*, 487 U.S. 977, 990 (1988)).  For this reason, "[a]n employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355, (2011)).  The court stated that "[t]here is no mystery in this case as to the layoff practices plaintiffs challenge: the Agency's choices to (a) target the SWA and SSA job categories for elimination; and (b) allow managers to make putatively individualized, discretionary and subjective choices of which positions to winnow from other units." *Id.* at 1249–50.  In other words, "[w]hat is at issue here is not a RIF in the abstract . . . but the means by which the Agency implemented it." *Id.* at 1243.  Noting that the District explained that CFSA did not use uniform criteria to select positions for termination, the court stated "[a]s the Agency itself describes it, the procedures for culling jobs fit *Watson*'s description of 'an employer's undisciplined system of subjective decisionmaking' as to which 'it is difficult to see why Title VII's proscription against discriminatory actions should not apply.'" *Id.* at 1250 (quoting *Watson*, 487 U.S. at 990–91).  Accordingly, the court remanded to determine whether "plaintiffs clear the statistical hurdle" of making out a prima facie case in light of the identified employment practices.  *Id.* at 1253.

On remand, after review of renewed motions for summary judgment and competing expert analyses, this Court held that Plaintiffs had cleared this hurdle.  Plaintiffs' expert's analysis showed "that the processes by which CFSA implemented the RIF—the challenged employment practices identified by Plaintiffs and the D.C. Circuit—disproportionately impacted African Americans." *Davis*, 496 F. Supp. 3d at 318 (D.D.C. 2020).  Thus, the Court denied the District's motion for summary judgment and the parties commenced discovery on the District's defense of business necessity.  Min. Order of November 17, 2020.

During this discovery phase, the District served its First Set of Interrogatories and Requests for Production. Def. District of Columbia's First Set of Interrogs. and Reqs. for Produc. ("Defendant's Interrogatories"), ECF No. 184-4. These "primarily seek to determine whether [P]laintiffs intend to challenge the District's basis for terminating positions in those six areas as well as to determine whether plaintiffs intend to argue that the District terminated those positions despite the availability of other, less discriminatory options that would have equally advanced the District's objectives." Def.'s Mem. Supp. Mot. Compel ("Mem.") at 4, ECF No. 184-1. As of September 7, 2021, the District had received responses from sixteen plaintiffs. *Id.* at 2. But four of these responses were unverified, and, according to the District, all of them were incomplete. *Id.* The District identified a list of twenty Plaintiffs who had not responded at all, months after service of the interrogatories. *Id.*

Thus, on September 7, the District moved to dismiss these twenty non-responsive plaintiffs for lack of prosecution and to compel full responses from the others pursuant to Federal Rules of Civil Procedure 37 and 41(b). Def.'s Mot. Dismiss for Lack of Prosecution and Mot. Compel, ECF Nos. 184, 185.[2] While the motion was pending and before the September 17, 2021 close of discovery, eleven additional plaintiffs responded to Defendant's Interrogatories. Pls.' Opp'n Def.'s Mot. Compel and Mot. Dismiss ("Opp'n") at 11–12, ECF No. 189. After the close of discovery, six more plaintiffs responded. *Id.* at 12. Also, the District apparently had inadvertently included one plaintiff, Carla Johnson, on its list of non-responsive plaintiffs even

---

[2] ECF Nos. 184 and 185 appear to be identical motions seeking both forms of relief.

though she had responded back in May.[3] *Id.* at 15.[4] All told, of the twenty plaintiffs whose claims the District moved to dismiss, only four have still not responded to Defendant's Interrogatories: Clarence Evans, Angela Khan Thomas, Celciel Moore, and Wanda Williams. *Id.* at 16. In its reply brief, the District pursues its motion to dismiss only insofar as it relates to these four non-responsive plaintiffs. Def.'s Reply Supp. Mot. Compel and Mot. Dismiss ("Reply") at 3, ECF No. 190 ("[T]he Court should dismiss plaintiffs Clarence Evans, Angela Khan Thomas, Celciel Moore, and Wanda Williams for failure to prosecute this action.").

Representing 38 of the 42 plaintiffs who remain in the action, including the four non-responsive plaintiffs, attorney Aderson B. Francois filed an opposition to the District's motion to dismiss and motion to compel. Opp'n at 13–14. The Court will refer to the 38 plaintiffs represented by Francois as the "Francois Plaintiffs." The remaining four plaintiffs, Cynthia Dudley, Karone Gray, David Hailes, and Lorraine Kelly, are represented by Donald Temple, and have not responded to the District's motion to dismiss and to compel. The Court will refer to these plaintiffs as the "Temple Plaintiffs."

---

[3] Although it is true that Plaintiffs' first set of responses to Defendants' Interrogatories included answers from Carla Johnson, she did not sign this submission alongside the other responding plaintiffs in the verifications section. Plaintiffs' Objections & Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, ECF No. 184-4 at 12–14. Nonetheless, Defendants do not appear to pursue their motion to dismiss insofar as it relates to Carla Johnson or to move to compel verified responses from her (in contrast to other plaintiffs). Mem. at 14 (requesting an order compelling verified responses with respect to Cynthia Dudley, Karone Gray, David Hailes, and Lorraine Kelly); Def.'s Reply Supp. Mot. Compel and Mot. Dismiss at 3, ECF No. 190. When counsel for Plaintiffs comply with the Court's order to provide more complete interrogatory responses, discussed below, they should take care to ensure that these responses comply with all applicable rules, including the requirement that interrogatory responses be signed under oath by the responding party. Fed. R. Civ. P. 33(b).

[4] These post-motion-to-dismiss responses apparently included some plaintiffs who had not responded before the motion to dismiss, but whom the District nevertheless did not include on its list of plaintiffs who should be dismissed for failure to prosecute.

### III.  ANALYSIS

#### A.  Motion to Dismiss

The District appears to rely on three sources of authority in support of its motion to dismiss for failure to prosecute.  Federal Rule of Civil Procedure 41(b) provides that the Court may dismiss claims when a plaintiff has failed to prosecute an action or to comply with the Federal Rules of Civil Procedure.  Local Rule 83.23 is substantially similar.  D.D.C. Local Rule 83.23 ("A dismissal for failure to prosecute may be ordered by the Court upon motion by an adverse party, or upon the Court's own motion.").  Finally, the federal rules governing discovery provide that the Court may dismiss an action in whole or in part if a properly served party fails to respond to interrogatories.  Fed. R. Civ. P. 37(b)(2)(A)(v), (d)(1)(A)(ii), (d)(3).

"To be sure," the four non-responsive plaintiffs' "'lengthy period of inactivity' might 'justify dismissal under Rule 41(b)' for failure to prosecute.  Likewise, the Court could theoretically dismiss all of [these plaintiffs'] claims as a discovery sanction under Rule 37(b)(2), for failure to respond to [the District's] interrogatories."  *Cartagena v. Centerpoint Nine, Inc.*, 303 F.R.D. 109, 114 (D.D.C. 2014) (quoting *Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988)).  And the non-responsive plaintiffs' counsel's explanation for their failure to respond—which gestures at the fact that the case has been pending for a long time and, quite vaguely, at the "Covid-19 pandemic"—is not persuasive or sufficient.  Opp'n at 26.  Still, courts applying Federal Rules of Procedure 41(b) and 37(b) and Local Rule 83.23 generally stress that dismissal is a "harsh" sanction and that it "is not appropriate until 'less dire alternatives have been tried without success.'"  *Cartagena*, 303 F.R.D. at 114 (quoting *Peterson v. Archstone Communities LLC*, 637 F.3d 416 (D.C. Cir. 2011) (internal quotation marks omitted); *Wilson v. On the Rise*

*Enters.*, LLC, No. 16-CV-2241, 2019 WL 399821, at *4 (D.D.C. Jan. 30, 2019); *Hildebrandt v. Vilsack*, 287 F.R.D. 88, 94–95 (D.D.C. 2012).

The Court has not yet tried (and the District has not yet asked for) less dire alternatives, so the Court denies without prejudice the District's motion to dismiss the claims of Clarence Evans, Angela Khan Thomas, Celciel Moore, and Wanda Williams. It does, however, order these plaintiffs to show cause within sixty days, on or before April 8, 2022, why their claims should not be dismissed because of their non-responsiveness. If they do not comply with this order, the Court will dismiss their claims. *See Cartagena*, 303 F.R.D. at 114.

### B. Motion to Compel

#### 1. Temple Plaintiffs' Unverified Responses

The District points out that the Temple Plaintiffs did not sign their interrogatory responses under oath. Mem. at 14; Def.'s Mot. Dismiss and Mot. Compel Ex. D ("Temple Response"), ECF No. 184-6. These responses therefore violate Federal Rule of Civil Procedure 33(b), which provides that each party to whom an interrogatory is directed must sign its answers under oath. The Court grants the District's motion to compel insofar as it relates to this shortcoming; the Temple Plaintiffs must provide signed, verified responses to Defendants' Interrogatories in accordance with the Federal Rules of Civil Procedure within sixty days, on or before April 8, 2022.

#### 2. Temple and Francois Plaintiffs' Incomplete Responses

"Interrogatories are part of the discovery process and help litigants prepare for trial by narrowing issues and determining what evidence they will need at trial." *Barnes v. District of Columbia*, 283 F.R.D. 8, 10 (D.D.C. 2012) (citing *8B Charles Alan Wright, et al., Federal Practice and Procedure* § 2162 (3d ed. 2012)). "An interrogatory may relate to any matter that

8

may be inquired into under Rule 26(b)" and "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). In turn, Rule 26(b) allows for inquiry into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Interrogatories must be answered fully with true, explicit, responsive, complete and candid answers. The party objecting to discovery bears the burden of showing why discovery should not be permitted, while the party seeking to compel discovery has the burden of proving that a discovery response is inadequate." *Barnes*, 283 F.R.D. at 10 (citations omitted and cleaned up). "Evasive or incomplete answers to interrogatories are to be treated as a failure to respond." *Id.* (citing Fed. R. Civ. P. 37(a)(4)).

The District objects to Plaintiffs' responses to Interrogatories Nos. 1, 2, 4, 5, 7, 8, 10, 11, 13, 14, 16, 17, and 22. Mem. at 8–9, 15–16. Broadly speaking, these interrogatories seek to clarify each individual plaintiffs' claims and ask why Plaintiffs contend that the RIF was not consistent with business necessity. *Id.* The District also objects to Plaintiffs' responses to Interrogatories Nos. 3, 6, 9, 12, 15, and 18, which ask for information regarding Plaintiffs' contentions that the District could have achieved its objectives through alternative, less discriminatory methods.[5] *Id.* at 8–9, 16–17. The District makes no mention of any of its other

---

[5] More specifically, the District objects to the responses to these interrogatories it had received by the time it filed its motion to compel: the [Francois] Plaintiffs' Objections & Responses to Defendant's First Set of Interrogatories and Requests for Productions of Documents, ECF No. 184-4, First Supplemental [Francois] Plaintiffs' Objections & Responses to Defendant's First Set of Interrogatories, ECF No. 184-5, and the [Temple] Plaintiffs' Objections & Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, ECF No. 184-6. The sufficiency of interrogatory responses submitted by additional Francois Plaintiffs after the District moved to compel is not before the Court. Still, the Court notes that the Francois Plaintiff responses submitted after the District moved to compel appear to be substantially similar to the challenged responses. Opp'n Exs. A–D, ECF Nos. 189-1–189-4.

interrogatories in its motion or briefs, so the Court does not understand the District to challenge Plaintiffs' responses to these interrogatories.

To start, the District has not met its burden of showing that the Francois Plaintiffs' responses to Interrogatories Nos. 1, 2, 4, 7, 8, 10, or 13, or the Temple Plaintiffs' responses to Interrogatory No. 1, were inadequate. *Barnes*, 283 F.R.D. at 10. Plaintiffs provided at least some information in response to these questions. For example, Interrogatory No. 1 asks for a list of plaintiffs alleging that they were discriminated against when the District eliminated the SSA position. Mem. at 5. In response, the Francois Plaintiffs produced a spreadsheet listing the position each plaintiff held at the approximate time of the RIF, *id.*; the Temple Plaintiffs listed Cynthia Dudley, Karone Gray, David Hailes, and Lorraine Kelly (all of the Temple Plaintiffs). Temple Response at 5. Defendants make no effort to explain why these responses, or any of the Francois Plaintiffs' responses to Interrogatories Nos. 2, 4, 7, 8, 10, or 13, are inadequate. The Court notes that some of the responses seem perfunctory and perhaps not directly responsive, but the District has not carried out its responsibility to "provide enough facts for the Court to understand the dispute and . . . [to] provide a concise legal analysis explaining why as a matter of law [it] is entitled to the discovery [it] seeks." *Barnes*, 283 F.R.D. at 11 (cleaned up). Therefore, the Court denies without prejudice the District's motion to compel further responses from the Temple Plaintiffs to Interrogatory No. 1 and from the Francois Plaintiffs to Interrogatories Nos. 1, 2, 4, 7, 8, 10, and 15.

The story is different with respect to Plaintiffs' challenged responses to the remaining interrogatories. The Francois Plaintiffs either rested on objections or said they did not have

---

Counsel for the Francois Plaintiffs should take care to update these responses as necessary to make them consistent with this opinion and avoid another motion to compel.

10

relevant information instead of providing any information in response to Interrogatories Nos. 3, 5, 6, 9, 11, 12, 14, 15, 16, 17, 18, and 22. Mem. at 8–9. Other than vague references to their complaint, the same is true of the Temple Plaintiffs' responses to Interrogatories Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 22. Temple Response at 6–13; *see* Mem. at 9.

Plaintiffs have not met their burden of justifying these non-responses.[6] *Barnes*, 283 F.R.D. at 10. The Francois Plaintiffs brief three points in their attempt to meet this burden, but none persuade the Court.

*First*, the Francois Plaintiffs argue that interrogatories seeking nondiscriminatory alternatives to specific decisions "making up the collective process of implementing the RIF" are irrelevant because Plaintiffs challenge the RIF as a whole, not individual District decisions comprising it. Opp'n at 31. To evaluate this objection, it is necessary to briefly review the burden-shifting framework that governs Plaintiffs' Title VII claims. Once a Title VII plaintiff identifies a specific employment practice that causes a disparate impact, "the burden then shifts to the employer to 'demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.'" *Davis*, 496 F. Supp. 3d at 312 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). "And if the employer can present evidence of business necessity, a plaintiff may rebut by showing that there is a less-discriminatory 'alternative employment practice' that would serve the employer's legitimate business interests." *Id.* (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(ii)).

The Francois Plaintiffs' relevance argument overreads the D.C. Circuit's holding. It is true that the D.C. Circuit held that Plaintiffs' challenge to the RIF sufficiently identified a

---

[6] The Temple Plaintiffs have not filed any response to the District's motion to compel. Their interrogatory responses raise similar objections to the ones the Francois Plaintiffs rely upon, so the below analysis pertains to both sets of plaintiffs.

11

specific employment practice. *Davis*, 925 F.3d at 1252. But it also held that "the record makes clear that plaintiffs' challenge to 'the RIF' is shorthand for its attack on the specific processes the Agency used in order to cut positions to meet its budget shortfall." *Id.* The D.C. Circuit also made clear that once Plaintiffs had shown a statistical disparity, "the parties [would] have an opportunity after appropriate discovery to address whether the Agency's execution of the reduction in force was justified by business necessity. Justification supporting elimination or downsizing *of certain offices* might at that point be seen to respond to the relevant statistical showing." *Id.* at 1253–54 (emphasis added). Thus, the D.C. Circuit repeatedly recognized the relevance of the individual steps that, together, carried out the RIF. *See, e.g.*, *id.* at 1252 ("What calls for identification and scrutiny, and what plaintiffs challenge here, is not the Agency's decision to reduce its workforce, but the process the Agency used to select positions for the chopping block."). The District's interrogatories seek Plaintiffs' contentions about the business necessity or lack thereof for specific steps taken as part of the RIF, and in turn about whether any nondiscriminatory alternatives existed for these specific steps. *See, e.g.*, Mem. at 6 (Interrogatory No. 3 asks plaintiffs to "[i]dentify all non-discriminatory alternatives that [they] contend the District could have utilized in 2010 to advance its business objectives other than eliminating the SSA position."). These inquiries are plainly relevant to the issues remaining in this litigation.

*Second*, Plaintiffs raise work product privilege objections. Opp'n at 29, 32. Interrogatory No. 22, for example, asks Plaintiffs to "[i]dentify the principal reasons that support [their] claim that the District lacked a business justification for conducting the reduction-in-force that is the subject of this litigation." Mem. at 9. The Francois Plaintiffs characterize this question as seeking "the rationale or reasoning behind a particular litigation strategy," which

12

"necessarily implicates [attorney] thoughts and mental impressions, in obvious violation of the work product privilege." Opp'n at 29. *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017) (Meriweather, Magistrate Judge) (noting that the work product privilege not only prohibits a party from discovering "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," but also shields against inquiry into "the mental processes of the attorney") (quoting Fed. R. Civ. P. 26(b)(3)(A) and *United States v. Nobles*, 422 U.S. 225, 238 (1975)). But Interrogatory No. 22, and others like it, do not ask about legal reasoning, litigation strategy, or attorney impressions. *See, e.g.*, Mem. at 7 (Interrogatory No. 12 requests that Plaintiffs "[i]dentify all non-discriminatory alternatives that [they] contend the District could have utilized to advance its business objectives other than eliminating or reclassifying 19 positions within the Office of Community Services' Congregate Care and Home Study Contract Monitoring Division in 2010"). Instead, they ask Plaintiffs to identify which *facts* they contend show that the District lacked business necessity or could have availed itself of methods other than those chosen during the RIF; at most, they ask for the application of law to fact.

These sorts of inquires fall well within the permissible scope of contention interrogatories. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); Fed. R. Civ. P. 33 advisory committee's note to 1970 amendment ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."); *cf. Saint-Jean v. District of Columbia*, No. 08-CV-1769, 2014 WL 12792681, at *6 (D.D.C. Sept. 8, 2014) (Kay, Magistrate Judge) ("Plaintiff seeks the facts supporting the District's theory that the statute of limitations

may have run. . . . the affirmative defense has been pled, and Plaintiff is entitled to know what facts Defendant has at this time that may support the statute of limitations theory. . . . Therefore, the Court will order that the District answer Interrogatory 22."). And, because they seek only contentions about which facts support various aspects of Plaintiffs' case, they do not implicate the work product privilege. *Barnes v. District of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010) ("In answering contention interrogatories the party is only giving the factual specifics which the party contends supports a claim, and this in no way impinges on the attorney's impressions or analysis . . . ." (citation and alteration omitted)); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 4 (D.D.C. 2011) (Facciola, Magistrate Judge) ("[A]ny broad claim that an interrogatory is impermissible because it probes a party's contentions as to how the law applies to the facts is wrong. Such probing is perfectly permissible and does not invade the work product privilege merely because the party's counsel must disclose the reasoning applying the law to the facts.").

*Third*, Plaintiffs say that the District's interrogatories asking about contentions related to non-discriminatory alternatives are unduly burdensome and overbroad because they seek "'each and every fact and application of law to fact' that support[s]" the District's allegations. Opp'n at 33 (citation omitted). But the challenged interrogatories do not do this; rather, they identify specific decisions related to the RIF and ask for Plaintiffs' contentions about any alternative practices that could have replaced these decisions. *See, e.g.*, Mem. at 6 (Interrogatory No. 6 asks Plaintiffs to "[i]dentify all non-discriminatory alternatives that [they] contend the District could have utilized to advance its business objectives other than eliminating the SWA position."). These are not overbroad interrogatories that "track[] each allegation in an opposing party's pleadings, and request[] 'each and every fact' and application of law to fact that the opposing

party plan[s] to use in support of its claims." *Saint-Jean*, 2014 WL 12792681 at *5–6 (citation omitted) (compelling response to an interrogatory that asked plaintiffs to "[d]escribe the factual basis for any affirmative defense asserted in any Answer to any complaint filed in this lawsuit by Plaintiffs.").

In sum, the Francois Plaintiffs have not met their burden to show that they should not have to respond to Interrogatories Nos. 3, 5, 6, 9, 11, 12, 14, 15, 16, 17, 18, and 22, and the Temple Plaintiffs have not done so with respect to Interrogatories Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 22. The Court orders the Francois Plaintiffs to provide complete, verified responses to Interrogatories Nos. 3, 5, 6, 9, 11, 12, 14, 15, 16, 17, 18, and 22, and the Temple Plaintiffs to provide complete, verified responses to Interrogatories Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 22, in a manner consistent with this opinion, within sixty days, on or before April 8, 2022. Finally, the Court orders those plaintiffs who have not filed any response to Defendant's Interrogatories, Clarence Evans, Angela Khan Thomas, Celciel Moore, and Wanda Williams, to show cause within sixty days, on or before April 8, 2022, why their claims should not be dismissed because of their non-responsiveness.

## IV.  CONCLUSION

For the foregoing reasons, the District's Motion to Dismiss for Lack of Prosecution and Motion to Compel Responses to Defendant's First Set of Interrogatories and Requests for Production (ECF Nos. 184, 185) is **GRANTED IN PART AND DENIED IN PART** without prejudice. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 7, 2022                                                        RUDOLPH CONTRERAS
                                                                                                United States District Judge